## Purdy *vs.* Huntington and others.

The rights of a purchaser of premises embraced in a mortgage previously assigned by his vendor to another are to be determined by the records in the clerk's office and the facts fairly to be inferred from what is there stated.

It is immaterial whether he actually searched or examined the records. He is to be charged with all the knowledge and information which the fullest examination of them would have imparted.

One who purchases land for a good consideration, and first puts his deed on record, has the rights of a purchaser in good faith, and will be protected by the registry act from the lien of a prior unrecorded assignment of a mortgage upon the property, held by another.

The statute requiring assignments of real estate to be recorded, (1 *R. S.* 756, §§ 1, 38,) applies to assignments of mortgages.

Subsequent grantees or mortgees of land, for a valuable consideration, without any actual notice of an unrecorded assignment of a prior mortgage, are to be regarded as purchasers in good faith, under said act.

If such mortgage does not appear by the record to have been assigned, they may assume that it is still held by the mortgagee, and may contract with him upon that assumption; and if they do so, in entire ignorance of a prior unrecorded assignment, and in perfect good faith as matter of fact, the title so acquired should prevail over the assignment.

THIS is an action for the foreclosure of a mortgage. Minot Mitchell, being seised in fee of the lands mentioned in the complaint, conveyed them to his son, Joseph S. Mitchell, on the 4th of June, 1855, who at the same time executed to him the mortgage mentioned in the complaint, together with the bond accompanying the same, to secure the purchase money, $2000. The mortgagee assigned this mortgage to the plaintiff on the same day. The mortgage was recorded in the proper office on June 28, 1855, but the assignment thereof was not recorded until February 19, 1864. On July 10, 1858, the mortgaged premises were conveyed by Joseph S. Mitchell to Minot Mitchell, and on October 3, 1859, they were conveyed by the latter to the defendant Calvin Huntington, who paid him the full value thereof, in money, in part at the time of the purchase, and in part shortly after. Huntington states that he never heard of the existence of this mortgage, before purchasing the premises, and made no

search in the records. Consequently he did not ask Mitchell to produce either the bond or mortgage. Before purchasing the lands, he inquired of said Mitchell whether the title was good, and whether there was any incumbrance on it. He was told by Mitchell that the title was good, and that the land was unincumbered, and fully believed that it was so. It thus appears that the mortgage was recorded prior to Huntington's purchase, but that the assignment was not recorded until after such purchase. Upon these facts the referee adjudged that the defendant Huntington took the land subject to the rights of the plaintiff as assignee of the mortgage, and reported in favor of the plaintiff. The defendant Calvin Huntington appealed.

*H. Humphrey*, for the appellant. I. The referee erred in charging Huntington with a knowledge of only half the facts which would have appeared by the records had they been examined, and denying him the benefit of the other half which would also have appeared. The records would have shown the existence of the mortgage, and since an unrecorded assignment is void, they would also have shown that Minot Mitchell still owned it, so that his deed would confer a good title. This was a palpable wrong. It was like allowing the debit side of an account, and refusing to allow the credit side, when proved by the same evidence.

II. The referee erred in permitting the fact that third parties regarded and recognized the mortgage as a subsisting security to counterbalance the facts that Huntington purchased and paid the full value of the land, with the assurance that there was no incumbrance on it, simply because he did not search the records, when if he had searched them they would have shown that the deed from Josiah Mitchell was a discharge of the mortgage, and that the title was clear.

III. The referee erred in regarding the question whether the mortgage debt was paid and the bond satisfied, and the question whether the land was discharged from the lien of

the mortgage as the same question; as the former and not the latter was the only question in each of the cases relied on by the referee. (*Brown* v. *Blydenburgh,* 7 *N. Y. Rep.* 141. *Kellogg* v. *Smith,* 26 *id.* 18.) In the latter case the question was whether the recording act applied to the assignment of a bond; in the former case the maker of the bond alone appealed, who was liable only for the payment of the bond, and who could only raise the question whether it had been paid. In the latter case the assignment was recorded. In both cases it was held that the recording act did not apply to the assignment of a debt, and this was all that was held in either case. Even the counsel, William M. Evarts, in the latter case, did not dare to take the ground assumed by the referee, but said, "It is not within the design or effect of these acts to guard the purchaser of debts, or things in action, against defects in the title of the vendor, to such debts or things in action. Unrecorded conveyances are declared ineffectual only against purchasers of the same estate, whose conveyance shall be first duly recorded." In the former case, the conveyance which it was claimed had discharged the lien of the mortgage, was made by one who had assigned it, and whose assignment was on record at the time of the conveyance. The report of the case is labored and confused, but the only question was whether one who has held a mortgage and assigned it, and whose assignment is on record, can discharge it. This was no question at all. The question of the discharge of the land was not before the court.

IV. One can not be regarded as not a bona fide purchaser merely because he has not searched the records, when if he had searched them he would have found the very fact to exist on which he relied; would have found the mortgage of which he is charged with notice, not assigned, but discharged by a reconveyance of the land to the mortgagee. Now the defendant was a purchaser of the land. He is chargeable with notice that Minot Mitchell once conveyed it to his son and took back a mortgage for the purchase money.

and that the mortgagor has reconveyed it to him, not subject to the mortgage, and he inquires of Mitchell, who tells him there is no mortgage on it. Now is he bound to suspect that the mortgagor has conveyed back the land for any consideration but the payment of the purchase money? The two cases relied on by the referee hold, that where one is about to pay a bond, or take an assignment of it as purchaser, he must inquire for it, and if not produced he will not be protected as a bona fide purchaser. But they do not hold that inquiry must be made of the obligor or the mortgagor if a mortgage accompanied. It was the mortgagor that was put upon inquiry in both cases. Here inquiry of him has been required. I say of him, for there was no one else in all the world of whom inquiry could be made. The mortgagee says there is no mortgage on the land. The assignee is not known, and the mortgagor appears to have paid it. Had Huntington been purchasing or paying off the debt, and had not inquired for the bond and mortgage, he would have been in default, within the cases relied on. Within these cases the referee has decided the following on the following facts: June 4, 1855, Minot Mitchell, having an interest in the land in question, conveys it Benjamin H. Purdy, who neither takes possession of the land nor records his conveyance. October 3, 1859, he conveys the same land to Calvin Huntington, who records his conveyance; the said Huntington inquiring only of Mitchell whether he has an unincumbered title, and being informed and believing he has. The referee has decided that the first conveyance is good, and the second bad. In other words, he has decided that one who does not search the record is not a bona fide purchaser. If this be law, a deed first recorded to a bona fide purchaser may be avoided by showing, not notice, but no search made. Now there is not a case in the books that makes the question of bona fides in a purchase depend upon the examination of the records. I think this is the first time it has been held that a neglect to search the records was equivalent to notice of

what the records did not show. The records showed Minot Mitchell owner of the mortgage interest in the land, and also of the fee; and the statute declared any assignment of the mortgage void because not recorded, as against Huntington's deed from Mitchell.

V. The assignment of the mortgage not having been recorded, was void. The deed from Mitchell to Huntington conveyed to him the premises discharged from the lien of the mortgage. As the record then was, that deed was a discharge of the same record. (*Ely* v. *Scofield,* 35 *Barb.* 330. 2 *R. S.* ch. 3, *part* 2, §§ 36, 37, 38, *p.* 171, 4*th ed. Burrill's Law Dic. Chattels Real,* § 41, *p.* 41.)

In *Ely* v. *Scofield* it was held that a discharge of a mortgage, by the mortgagee, while the assignment of the mortgage was not recorded, would discharge the land from the lien, and that his certificate of discharge would do so. *Brown* v. *Blydenburgh,* (7 *N. Y. Rep.* 141,) and *Kellogg* v. *Smith,* (26 *id.* 18,) do not hold a contrary doctrine.

*Sandford E. Church,* for the respondent. I. The appellant claims that the mortgage merged in the title subsequently acquired by Minot Mitchell, the mortgagee. This is manifestly untenable. 1. The very idea of merger presupposes the union of the two different titles in the same party. (*See Clift* v. *White,* 12 *N. Y. Rep.* 519.) 2. This was never the case here. Minot Mitchell had assigned the mortgage long before the premises were conveyed to him by the mortgagor. 3. If it is claimed that, *as to Huntington,* there was a merger, the assignment being void as to him for want of record, then this point is entirely dependent on the other point in the case, and need not be argued separately. 4. Even if we conceded that as against Huntington, Minot Mitchell was to be regarded as still the owner of the mortgage, it would not follow that there was necessarily a merger. That would still depend on his intention, and the equity of the case. (*Clift* v. *White,* 12 *N. Y. Rep.* 519, 535. *James* v. *Morey,* 2 *Cowen,* 246.

*Starr* v. *Ellis*, 6 *John. Ch.* 393.    *Gardner* v. *Astor*, 3 *id.* 53. *Forbes* v. *Moffatt*, 18 *Ves.* 385.    *Champney* v. *Coope*, 32 *N. Y. Rep.* 543.)   5. It would be plainly inequitable to presume an intention on the part of Mitchell thus to merge a mortgage which he did not in fact own when the land was conveyed to him.

II. The only question really involved in this case is, whether the omission of the plaintiff to record the assignment of the mortgage to him made it void against Huntington, who purchased the mortgaged premises with constructive notice of the mortgage, but without notice of the assignment. It is submitted that the decision of the referee upon this point was clearly right. 1. Apart from the Revised Statutes, it was well settled that an assignment of a mortgage needed not to be recorded, for any purpose. (*James* v. *Morey*, 2 *Cowen*, 246.)   2. The Revised Statutes (1 *R. S.* 762, § 38) are interpreted as avoiding an unrecorded assignment of a mortgage, in favor of a subsequent purchaser of the same real estate, in good faith and for value. (*Williams* v. *Birbeck*, *Hoff. Ch.* 369.)   3. Huntington is not protected by the Revised Statutes, for reasons stated in the following points:

III. Huntington was not a purchaser *in good faith.* To make him such, it was indispensable that he should have inquired of Mitchell for the bond and mortgage. This he did not do. The record gave him notice of their existence, and he ought to have insisted upon their production. 1. Good faith, within the meaning of the statute, includes the absence of all notice, whether actual or constructive, of facts which should have put a prudent man upon inquiry, or else the pursuit of such inquiry to such extent as ought to satisfy a man of ordinary caution. (*Williamson* v. *Brown*, 15 *N. Y. Rep.* 354.   *Howard Ins. Co.* v. *Halsey*, 4 *Sandf.* 565.   8 *N. Y. Rep.* 271.   *Pendleton* v. *Fay*, 2 *Paige*, 202.   *Sigourney* v. *Munn*, 7 *Conn. R.* 333.)   2. It is the duty of a purchaser of land incumbered by a mortgage, if he wishes to have it clear of the lien, to insist upon the production of the bond and

mortgage. He has no right to accept the mere word of the seller in their place. (*Brown* v. *Blydenburgh*, 7 *N. Y. Rep.* 141. *Kellogg* v. *Smith*, 26 *id.* 18.) 3. In *Brown* v. *Blydenburgh*, (7 *N. Y. Rep.* 141,) the position of George Atwell was precisely similar to that of the appellant here. George Atwell purchased, without actual notice, from W; C. Atwell, who was both owner and mortgagee of record, but who had previously assigned the bond and mortgage. The vice chancellor held the title of George Atwell to be subject to the mortgage; The entire judgment was approved by the Court of Appeals. 4. *Kellogg* v; *Smith*, (26 *N. Y. Rep.* 18,) is a very strong case to show that the bond as well as the mortgage must be actually produced to a purchaser claiming to act in good faith, and that no excuse for their non-production (except, no doubt, their actual destruction or loss) can be properly accepted. The declarations of Mitchell to Huntington could not be sworn to by the latter ; the former being the assignor of the plaintiff, and dead. The evidence was received subject to the objection. (*Code*, § 399.)

IV. The recording acts do not affect the rights acquired by a transfer of a bond by manual delivery; Their only effect on the assignment of a mortgage is to avoid the written instrument of assignment in certain cases; But when this is done, the transfer of the *bond* by delivery remains unaffected, and this carries the mortgage with it as an incident. This was the view taken by Gould, J. and other members of the court in *Kellogg* v. *Smith*, (26 *N. Y. Rep.* 18.)

*By the Court;* E. DARWIN SMITH, J. The referee correctly held that the rights of the defendant Calvin Huntington, as a purchaser of the premises embraced in the mortgage previously assigned by his vendor to the plaintiff, are to be determined by the records in the clerk's office and the facts fairly to be inferred from what was there fairly stated. It is immaterial whether Huntington actually searched or examined the records. He is to be charged with all the knowledge

and information which the fullest inspection of them would have imparted. From such inspection he would have learned, and must be presumed to know, that the premises which Minot Mitchell was proposing to sell to him were formerly owned by said Mitchell, and were, on the 4th of June, 1855, conveyed by him by deed, for the consideration of $3000 therein expressed, to Joseph S. Mitchell, the latter at the same time giving back a mortgage on said land for the sum of $2000, part of the purchase money therefor, which mortgage was accompanied by a bond which provided, according to the recital in said mortgage, for the payment of said sum of $2000 in three years from date, with semi-annual interest. He would also have learned from said records that three years afterwards, and four days after said bond and mortgage became due and payable, (July 10, 1858,) the said Joseph Mitchell re-conveyed the premises to the said Minot Mitchell for the same consideration expressed in the deed to him of July 4, 1855, ($3000,) by deed without covenants.

The legitimate inference from these facts, which embraced all the information to be derived from the registry of deeds and mortgages in the county clerk's office of Monroe where this land was situated, was that the sale from Minot Mitchell to Joseph S. Mitchell was rescinded, and Minot took back the land for the balance remaining unpaid of the original purchase money and secured by said bond and mortgage, and repaid to Joseph S. the $1000 of purchase money paid on the purchase by the said Joseph S. to the said Minot Mitchell. This is the conclusion which would be naturally drawn by the simple inspection of the records. The reconveyance of the land would be presumed to be in discharge and satisfaction of the mortgage, inasmuch as it did not appear that said mortgage had ever been assigned; no assignment of it appearing upon the records. The legal and equitable title thus appeared to be united in Minot Mitchell. The mortgage, I think, from these facts would be presumed to be merged in the legal title, and thus extinguished. Such, I think, would

be the natural inference and language of the records, and this the interpretation which would ordinarily be put upon the facts therein and thereby disclosed. But the learned referee who tried the case was of the opinion that the record of the mortgage was notice to Huntington, sufficient to put upon him the duty to inquire in respect to it, and require its production or discharge, and that he was not therefore a *bona fide* purchaser in contemplation of law, under the recording act. The opinion of the referee is based upon the cases of *Brown* v. *Blydenburgh*, (7 *N. Y. Rep.* 141,) and *Kellogg* v. *Smith*, (26 *id.* 18.) These cases would be entirely in point and would be quite conclusive as authority upon the question, if Huntington had been a purchaser of the bond and mortgage executed ·by Joseph S. Mitchell to Minot Mitchell, instead of being a grantee of the land. In *Brown* v. *Blydenburgh*, the mortgagor paid off his mortgage by a conveyance of the land to one Atwell, an assignee of the mortgage, instead of requiring the production of the bond and mortgage, and the court held that he remained liable upon the bond, which had been previously assigned to the plaintiff. Judge Ruggles says, in his opinion in the case: "In the common and usual course of business Atwell, if he had been the owner of the bond and mortgage, would have delivered them to Blydenburgh when the satisfaction was acknowledged, and it is against all probability that Blydenburgh would have paid the debt either in money or by a conveyance of the land, without inquiring for his bond." So in *Kellogg* v. *Smith*, Buckley and Clafflin purchased of Bedell, the mortgagee, the bond and mortgage in question without requiring the production of either of the bond or mortgage, and it appeared that the same had been previously assigned and delivered to the plaintiff, but said assignment had not been put upon record. The court held that it was the case of the purchase of a bond and mortgage which could be transferred simply by assignment and delivery, and was not ·within the statute, and that the recording act was designed

to protect purchasers of land, and not purchasers of debts or things in action. Judge Gould said: "The recording act can not be tortured into exercising any power over the sale of the bond." Four of the judges concurred that the non-production of the bond and mortgage was such notice as to put the defendants on inquiry, and to deprive them of the protection given by the recording act to purchasers without notice. This was a case where the parties, the respondents, claiming to hold the bond and mortgage by assignment, pur-chased it without requiring its production or delivery, resting upon the fact that no assignment appeared upon record. Clearly this was not within the object and intention of the statute. They purchased property which passed by delivery, and did not get possession of it or insist on its delivery. In this case Huntington purchased the land. He had a right to rely upon the registry. He had a right to assume that it contained and showed all the conveyances or liens which affected the title to the premises. The registry acts were designed for that purpose, to protect grantees and purchasers and mortgagees of the land against unrecorded conveyances or liens. Huntington purchased of, and took his title from, the party appearing by the record to have the legal and equitable title to the land, and he took a deed with covenants of seisin and warranty, which protected him against the mortgage, as against Minot Mitchell, the mortgagee, and his grantor. But supposing he was bound to inquire about this mortgage and whether it had been assigned or was outstand-ing as a valid security, of whom should he have inquired? He did inquire of Minot Mitchell if the premises were unin-cumbered, and was informed by him that there was no incumbrance on the property, and that the title was good. How could he have ascertained that the plaintiff had the bond and mortgage? It seems to me that he was not bound to inquire further. As a purchaser of the land from Minot Mitchell he had, I think, the right to assume that the mort-gage was merged in the legal title, and satisfied. Purchas-

Purdy *v.* Huntington.

ing for a good consideration and putting his deed first on record, he has the right of a purchaser in good faith, and is protected by the registry act from the lien of the plaintiff's unrecorded assignment of said mortgage. If this be not so, it seems to me it must be upon the ground that the original record of the mortgage remains notice to all the world of its existence and validity, till paid, and that the assignment of a mortgage need not in any case be recorded, under the statute.

But the statute requiring all assignments of real estate to be recorded, (1 *R. S.* 756, §§ 1, 38,) certainly applies to assignments of mortgages. It was so intended by the revisers, who say in their notes, (3 *R. S.* 2d ed. *p.* 607,) "Assignments of mortgages will be included in the term conveyances," and Chancellor Walworth, in *Vanderkemp* v. *Shelton,* (11 *Paige,* 28,) so held. And see also *Fort* v. *Burch,* (5 *Denio,* 187.) To give the registry act, so far as relates to the assignment of mortgages, any effect, it must be held that subsequent grantees or mortgagees of the land for a valuable consideration without any actual notice of the unrecorded assignment, are to be regarded as purchasers in good faith, under said act. They must know of the existence of the original mortgage, but if such mortgage does not appear by the record to have been assigned, they may assume that it is still held by the mortgagee, and may contract with him upon that assumption; and if they do so, as the defendant Huntington did in this case, in entire ignorance of the unrecorded assignment and in perfect good faith as matter of fact, the title so acquired, I think, should prevail over such assignment. If this view is concurred in by my brethren, it follows that the judgment below should be reversed, and a new trial granted, with costs to abide the event.

Judgment reversed.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]