# SUPREME COURT.

## THE MUTUAL LIFE INSURANCE COMPANY agt. SAMUEL H. WILCOX and others.

*Mortgage — Release — Recording act — Latent equities — Constructive notice by possession.*

Under the recording acts, all unrecorded instruments in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, is void and of no effect as against any subsequent mortgagee, or assignee of a mortgage, who in good faith and for a valuable consideration takes a mortgage, or an assignment of a mortgage. Equity gives no assistance against a "purchaser" for a valuable consideration without notice.

A release of part of mortgaged premises is a "conveyance" by which the title to real estate may be effected, and unless duly recorded is void against a subsequent assignee of a mortgage for value, and without notice, under the recording act.

The general rule is that where the possessor of land causes the registry of a particular title, a subsequent purchaser need not look beyond it. The purchaser has a right to assume where the possessor has put his deed on record, that he has recorded all the conveyances affecting his title.

The rule of constructive notice by possession does not apply to the assignee of a prior mortgage, because the natural inference in such a case is that the occupant is holding subject to the mortgagee.

The general rule that a purchaser of a mortgage takes it subject to all latent equities existing in favor of the mortgagor, and also of third parties, relates only to those equities which are not within the scope of the recording act, and against which subsequent purchasers, *bona fide*, are thereby protected.

*Special Term, February*, 1878.

ON February 8, 1866, the defendant S. H. Wilcox and wife gave to one David D. Houston the bond and mortgage

described in the complaint herein to secure the payment of $9,000, a portion of the purchase-money of the premises described in said mortgage. This mortgage was recorded in Orange county records in book 134 of mortgages, page 498, on February 12, 1866. The mortgaged premises are all situated in the county of Orange, New York. On June 30, 1868, the said Wilcox and wife, by deed dated on that day, conveyed twenty-eight feet of the mortgaged premises to Stephen S. Conkling, which deed was recorded on the 8th day of September, 1869, in said clerk's office. On June 30, 1868, said Wilcox and wife conveyed the balance of said mortgaged premises (being the part known in this action as the Erie building) to Sarah E. Slawson, by deed bearing date that day and recorded in Orange county records for deeds on July 3, 1868. On October 15, 1868, said Conkling and wife conveyed that portion of the premises deeded to him by said Wilcox (and known in this action as a part of Depot street) to the village of Middletown, by deed bearing date that day and duly recorded in Orange county records for deeds on the 8th day of September, 1869.

On July 1, 1868, $2,000 of principal was paid on said bond to David D. Houston, the then holder and owner thereof, under an arrangement between him and the defendants, Wilcox and Conkling, by which he was to release that portion of the mortgaged premises conveyed as aforesaid by the said Wilcox and wife to said Conkling; that a release thereof was executed by the said Houston and delivered to the defendant Conkling; that the said release never was recorded, and that the said Conkling is unable to find the same now.

On March 16, 1869, said Slawson conveyed that portion of the premises known as "Erie building" to the defendant, Lewis H. Stage. His deed was recorded March 17, 1869. On August 10, 1869, the said Stage and wife conveyed the "Erie building" to Wells and Noyes. Their deed was recorded August 13, 1869. On the 12th day of December, 1871, the said Houston, for a full and valuable consideration,

duly assigned the said bond and mortgage to the defendant, Benjamin D. Brown. Said assignment was duly recorded in the Orange county clerk's office on the first day of July, 1872, in book 183 of mortgages, page 519. On June 1, 1872, the defendant, Angeline Wells, and husband conveyed the equal undivided one-half part of the mortgaged premises, known as the "Erie building," to the defendant, Henry R. Low. Low's deed was recorded June 5, 1872. On July 2, 1872, the defendant, Benjamin D. Brown, in consideration of the sum of $7,000 in money paid to him at that time by the plaintiff in this action, that being the exact amount then due on the said bond and mortgage, by an instrument in writing under his hand and seal and duly acknowledged, bearing date on that day, duly sold, assigned, transferred and delivered the said bond and mortgage to the plaintiff herein, which assignment was duly recorded in the Orange county clerk's office on the 12th day of July, 1872, in book 187 of mortgages, page 286; that said Brown at the time he took the assignment of the said bond and mortgage had no notice, intimation or knowledge that there was any arrangement or agreement by which said Houston was to release or had released a portion of the mortgaged premises; that the Mutual Life Insurance Company of New York, at the time it took the assignment of the said bond and mortgage, paid the said Brown in cash $7,000, the exact amount then due thereon; had no notice or knowledge that there was any arrangement or agreement by which any portion of the mortgaged premises was to have been released or had been released from the lien of the said mortgage; that at the time the said plaintiff took the said mortgage from the said Brown it caused an official search to be made of all the premises described in said mortgage from the date of said mortgage and prior thereto, up to and including the date of the assignment to them, to wit, July 2, 1872; that the said mortgage was at that time, as appears by the official search of the clerk of the county of Orange, a valid and subsisting lien upon all the premises described therein, and that no release of

any portion thereof was by said search disclosed; that upon a foreclosure of a subsequent mortgage given upon that portion of the mortgaged premises known as the Erie building, William Vanamee, as referee, sold and conveyed all the premises mentioned and described in said last-mentioned mortgage to one Andrew B. Toulon by deed dated October 20, 1875, and duly recorded on the 5th day of January, 1876; that Andrew B. Toulon gave his bond to the plaintiff in the penal sum of $14,000 on the 14th day of December, 1875, conditioned that he should pay the amount due on the plaintiff's bond and mortgage, with interest on demand. This bond was given as collateral to the mortgage described in the complaint herein. Andrew B. Toulon died in 1876. At the time of his death he was the owner of that portion of said premises known as the "Erie building." The last will and testament of Andrew B. Toulon was duly proven as a will of real and personal property, and the defendant, Margaret Jane Squires, was duly appointed the executrix thereof on the 27th day of October, 1876. As to who assumed and are liable for the deficiency in this action, we would refer to the printed complaint herein.

On the 9th of January, 1877, judgment was rendered for the relief demanded in the complaint herein. On the 24th day of February, 1877, Hon. John G. Wilkin, as referee, sold to the said Benjamin D. Brown that portion of the mortgaged premises known as the "Erie building" for the sum of $5,475. On the said 24th day of February, 1877, said referee sold to the defendant, Henry R. Low, that portion of the mortgaged premises known as "Depot street" for $1,600; that the amount due the plaintiff on the 24th day of February, 1877, was $8,261, including costs of action, at that time.

*Hulse & Finn*, for plaintiff. The plaintiff is protected by the recording act against any unrecorded agreements to release, or against any unrecorded release, of a portion of the mortgaged premises. An unrecorded agreement to release or an unrecorded release as against the plaintiff, is absolutely void

(1 *R. S.*, *p.* 756–762, *secs.* 1, 36, 37, 38). The term "real estate" as defined in section 36, embraces, among other things, all chattels real, except leases for a term not exceeding three years. A mortgage is a chattel real, and comes within the definition of real estate, as given in section 36 of the recording act (*Ely* agt. *Scofield*, 35 *Barb.*, 330 ; *Burrell's Law Dic.*, 282 ; *Dickerson* agt. *Tillinghast*, 4 *Paige*, 215). The term "purchaser," as defined by section 37 of recording act, includes a mortgagee, an assignee of a mortgage, a lease or other conditional estate. A mortgage on land creates a condititional estate in the premises mortgaged. The purchaser of a mortgage is a purchaser of the conditional estate created by the mortgage, as well as a purchaser of the conveyances by which that interest or estate is created (*Belden* agt. *Meeker*, 2 *Lans.*, 470; *Ely* agt. *Scofield*, 35 *Barb.*, 330 ; *St. Johns* agt. *Spaulding*, 1 *N. Y. S. R.* [*T. & C.*], 483 ; *Fort* agt. *Burch*, 5 *Denio*, 187 ; *Vanderkemp* agt. *Sheldon*, 11 *Paige*, 29 ; *Belden* agt. *Meeker*, 47 *N. Y.*, 307). The term "conveyance," as defined by section 38 of the recording act, embraces every instrument in writing by which any estate or interest in real estate is mortgaged or assigned, or by which the title to real estate may be effected, either in law or equity. The assignment of a mortgage comes within the definition of a "conveyance," as used in the recording act, and may be recorded as such. By the Revised Statutes the principles of the recording act are extended to assignments of mortgages (*Vanderkemp* agt. *Sheldon*, 11 *Paige*, 38; *Belden* agt. *Meeker*, 2 *Lans.*, 470 ; *Ely* agt. *Scofield*, 35 *Barb.*, 330; *St. Johns* agt. *Spaulding*, 1 *N. Y. S. R.* [*T. & C.*], 483 ; *Jackson* agt. *Van Valkenburgh*, 8 *Cow.*, 260 ; *Crane* agt. *Turner*, 7 *Hun*, 357). The mortgage given by Wilcox to Houston, by Houston assigned to Brown, and by Brown assigned to the plaintiff, was given for a "valuable consideration" within the meaning of the recording acts ; and the plaintiff and Brown were both "*bona fide*" purchasers for a "*valuable consideration*" of the conditional estate created by said mortgage in all the premises described therein, without notice of any agreement

to release, or of any release of a portion of the mortgaged premises, and hence, under the recording act, the release given by Houston not having been recorded at the time the plaintiff took the assignment of the bond and mortgage, is void as against the plaintiff (*Fort* agt. *Burch*, 5 *Denio*, 187; *Jackson* agt. *Van Valkenburgh*, 8 *Cow.*, 260; *St. John* agt. *Spaulding*, 1 *N. Y. S. R.* [*T. & C.*], 483; *Delaney* agt. *Stearns, Ct. of Appeals, not yet reported, argued Mar.* 29, 1876, *op. by* RAPALLO, *J.; Vanderkemp* agt. *Sheldon*, 11 *Paige*, 29; *Willard on Real Estate*, 118 to 125; *Belden* agt. *Meeker*, 2 *Lans.*, 470; 47 *N. Y.*, 307). It is well settled that if one effected with notice convey to another without notice the latter is as much protected as if no notice had ever existed (*Jackson* agt. *Van Valkenburgh*, 8 *Cow.*, 260; *Jackson* agt. *Givens*, 8 *Johns.*, 137; *Fort* agt. *Burch*, 5 *Denio*, 187).

*William H. Stoddard*, for defendant.

PRATT, *J.* — My first impression was that the plaintiff had constructive notice of the title of the defendant, the village of Middletown, at the time it took the assignment of the mortgage in suit; but, upon a more careful examination of the case, I am constrained to hold that such a view is not correct.

Both the warrantee deeds referred to, from which it is claimed notice to the plaintiff must be inferred, are subsequent to the mortgage, and they contain no recitals inconsistent with the title of the mortgagee.

The general rule is, that where the possessor of land causes the registry of a particular title a subsequent purchaser need not look beyond it (4 *Kent's Com.*, 203; *sec.* 179, *notes*). The plaintiff, therefore, had a right to assume, since defendant had put his deed on record, that he had recorded all the conveyances of said premises affecting his title thereto.

Was the possession of the land in question of such a character as to put the purchaser of the mortgage upon inquiry?

I think not. The possession was in no way inconsistent with the rights of the mortgagee.

The village of Middletown must be presumed to have entered into possession under its deed, which was dated long after the mortgage, and the purchaser of the mortgage, in the absence of any record to the contrary, had a right to assume that such possession was subordinate to the rights of the mortgagee.

The rule of constructive notice by possession does not apply to the assignee of a prior mortgage, because the natural inference in such a case, is, that the occupant is holding subject to the mortgagee (64 *N. Y.*, 76; 20 *N. Y.*, 400; 23 *N. Y.*, 253).

I am also of opinion that the release to the defendant Conkling was a " conveyance of real estate " under the recording act. This view is sustained by the opinion of TALCOTT, J., in the case of *St. John* v. *Spaulding* (1 *T. & C.*, 483), and I find no case in which that doctrine is overruled (*See sec.* 38, *Recording Act*).

It is equally clear, upon authority, that the plaintiff was a " subsequent purchaser " of the same real estate, as defined by the same act (*sec.* 37; 46 *Barb.*, 389; 64 *N. Y.*, 22; 1 *T. & C.*, *supra*).

The proof shows that the plaintiff and its assignee purchased the mortgage in good faith and for a valuable consideration, and without any notice, actual or constructive, of the release to defendant Conkling, and the assignment to each had been duly recorded prior to the recording of the release.

It follows, therefore, that the latter instrument is void as against this plaintiff. It is true, as urged by defendant's counsel, that the plaintiff took the mortgage subject to all latent equities existing in favor of the mortgagor, and also of third parties (*Trustees* v. *Wheeler*, 61 *N. Y.*, 88).

But this general rule relates only to those equities which are not within the scope of the recording act, and against which subsequent purchasers, *bona fide*, are thereby protected. For example, if the plaintiff had purchased the mortgage in question, without notice of any payment thereon, it could not

be foreclosed for more than the amount actually due, and it is permitted to have the entire premises sold in satisfaction of the amount unpaid, simply because the recording act makes the release given to discharge the lien, or a portion thereof, *void* under the facts in this case.

There are some other questions involved but it is not necessary to advert to them, as the foregoing views, if correct, are decisive. It is with much hesitation and reluctance that I have concluded to dissent from the views of the justice, as quoted by defendant's counsel, who decided the motion "to vacate the sale and to permit Conkling to defend " but, after a consideration of all the authorities referred to, and contrary to my first impression, I am led to believe that neither upon principle or authority, can the release referred to in any wise affect the title of the plaintiff to the land in dispute.

In no event, if it be true that the release in question was delivered by Conkling to the village of Middletown with the deed, can Conkling be called upon to make good his covenant of warrantee to said village, and hence he has no equity upon which to base his claim to interfere in this suit.

The plaintiff is, therefore, entitled to a decree declaring the release void as against it, and for a resale of the premises, and for costs against defendant Conkling.