Fallass, Administrator, vs. Pierce and others.

FALLASS, Administrator, vs. PIERCE and others.

*Recording act, construction and effect of* — *Owner of fee, when barred from taking title by tax deeds* — *Defective acknowledgments, effect of record of* — *Re-hearing, effect of refusing or granting motion for.*

I. *Per* CURIAM.

1. The protection of the recording act (R. S., ch. 86, sec. 25), which declares an unrecorded deed void, as against a subsequent purchaser in good faith, and for a valuable consideration, whose deed shall be first recorded, is *not* confined to a subsequent purchaser *immediately from the same grantor*, but applies to one who takes from him through mesne conveyances; and it protects him, if a purchaser in good faith, for value, in case the chain of title to him is first on record, although the intermediate grantees were chargeable with bad faith, or paid nothing. (COLE, J., dissents.)

2. P. mortgaged land to B., and the mortgage was recorded. B. assigned the mortgage to R., and the assignment was *not* recorded. B. then released the land by deed to P. (who knew of the assignment to R.), and this release was recorded; and thereupon P. conveyed to X., a purchaser in good faith, for value, who neglected to record his deed from P. until *after* the assignment to R. and also an assignment from

R. to plaintiff's intestate, were recorded; said intestate having taken such assignment in good faith, for value. *Held*, that the deed to X., *if recorded before the assignment* of the mortgage, would have prevailed against the mortgage, under the recording act; but in the absence of such prior record, it does *not* cut off the mortgage. (COLE, J., dissents.)

3. X. having acquired the fee, subject to said mortgage, and being presumptively in possession and liable for taxes subsequently levied, could not take title by tax deed for such taxes unpaid.

4. Two powers of attorney to sell and convey lands situate in this state, were executed in 1852, and were acknowledged respectively before a justice of the peace and a county clerk in Illinois, and were recorded in the proper register's office in this state in 1855 and 1859, respectively; but were without the certificates authenticating the signatures and official character, etc., of said justice and clerk, required by sec. 10, ch. 59, R. S., 1849. *Held*, that under sec. 105, ch. 137, R. S., and sec. 1, ch. 272, Laws of 1864 (2 Tay. Sts., 1619, § 159), the record of a deed executed in pursuance of such warrants of attorney and otherwise duly recorded, must be held in all legal proceedings *prima facie* a valid record, binding purchasers like any other recorded deed.

5. A motion for a rehearing denied is a bar to another motion for the same purpose by the same party.

6. But where a rehearing is granted, and the cause is again heard and decided, the same party may move a second time for a rehearing.

    II.  *Per* DIXON, C. J., *arguendo*.

1. A deed recorded without authority has only the effect of an unrecorded deed.

2. A purchaser of real estate is conclusively presumed to know every conveyance *properly of record*, by which the title to such real estate is, or may be, affected in law, and buys at his peril in view of its possible legal effect.

3. If an earlier deed to A. is recorded *after* a later one, (from the same grantor) to B., a subsequent purchaser from B. takes subject to all rights which A. has as against B.

4. But if A., knowing of B.'s recorded deed, neither records his own earlier one, nor brings suit to cancel that to B., (filing notice of *lis pendens*), but merely takes and records a *later* deed to himself from the common grantor, he represents himself to the world as merely a *subsequent purchaser*, by deed later both in execution and record than that of B., and should be held *estopped* from setting up his earlier deed as against one who afterwards purchased from B. in good faith, for value. The decision in *Ely v. Wilcox*, 20 Wis., 523, sustained on this ground.

5. The "subsequent purchaser" spoken of in the recording act (sec. 25), is one who takes his deed after the *actual execution of a deed* to another, and the good faith required of him is a want of knowledge or information
• that such deed exists, or of facts which should have put him upon inquiry as to its existence. The provision has no reference to one who, knowing that another party has *bargained* and *paid for* the land, still takes in fact the earlier deed, and has it first recorded.

6. In the last mentioned case, the legal title passes by the first executed deed, as before the statute, and the other purchaser is still left to his remedy in equity.

APPEAL from the Circuit Court for *Outagamie* County.

Action for the foreclosure of a mortgage. On the 28th day of March, 1859, the defendant, *William H. Pierce*, mortgaged the lands in controversy, to the defendant *Blanchard*, the mortgages being recorded upon the same day. On the 2d day of April, in the same year, *Blanchard* assigned the mortgages to Rice, but the assignments were not recorded until June 21, 1861. *Blanchard* then executed to *Pierce*, on the 10th of August, 1859, an instrument embracing both a quit-claim deed of the premises and a release of the mortgages, which instrument was recorded December 8, 1860. This instrument was taken by *Pierce* with knowledge of the previous assignments of the mortgages by *Blanchard* to Rice. On the 19th of September, 1860, *Pierce* conveyed to the defendant *Parks*, a purchaser in good faith, and for value, who neglected to put his deed upon record until after the assignments of the mortgages to *Rice* were recorded, and after the assignments of the same mortgages by *Rice* to Carrie J. Fallass, by whose administrator the action was brought, were made and recorded. Two powers of attorney in the chain of title relied upon by plaintiff to defeat defendant's claim of paramount title, were executed and purported to have been acknowledged, respectively, before a justice of the peace and a county clerk in Illinois, but neither of them bore any certificate authenticating the official character, genuineness of signatures, authority of the officers and formality of the acknowledgements, as required by ch. 59, § 10, R.

S., 1849.    The court found as conclusions of law, that the quit-claim deed and release of *Blanchard* to *Pierce* were fraudulent and void as to the plaintiff, and that Rice and Carrie J. Fallass were *bona fide* purchasers of the mortgages for value. Judgment of foreclosure against all the defendants, from which they appealed.

*Palmer, Hooker & Pitkin* and *H. Pierce*, for appellants, contended that the release of the mortgages being recorded before Carrie J. Fallass, or either of the purchasers acquired any interest in the property, they all took their interests with knowledge of such release.    The record of the release, being notice of the extinguishment of the mortgage interest, the subsequent record of a prior assignment could not change the character of that notice.    The record of an assignment of a mortgage is not notice to a purchaser from the mortgagor, so as to invalidate a payment to or settlement with the mortgagee.    Revised Statues, ch. 86, § 33.    To the point that the record of the powers of attorney was not sufficient to charge subsequent purchasers with notice, in that it failed to show any certificate of the official character of the officers taking the acknowledgments in another state, counsel cited Revised Statutes, ch. 59, § 10; *Ely v. Wilcox,* 20 Wis., 523.

*Jason Downer,* for respondent, argued that an assignment of a mortgage, or even a mere release, was a conveyance of real estate, as defined by sec. 35, ch. 86, R. S.    The term "purchaser," as defined by the statute, sec. 34, embraces the assignee of a mortgage, the vendee in a quit-claim deed, or the releasee in a release of a mortgage.    The doctrine of *Fort v. Burch.,* 5 Denio, 187, under recording acts in New York, similar to those in Wisconsin, was that a junior mortgagee who took his mortgage with notice of a prior unrecorded mortgage, gained no advantage by first recording his own mortgage, and that the assignee of the junior mortgage without notice, is not entitled to preference unless he record his assignment before the prior mortgage is recorded.    If he omits so to record it, his want of

notice will not avail him. Before 1828, in New York, a differents tatute and rule prevailed. See 19 Johns., 281; 5 Paige, 104, explaining former statute. But Rice having recorded the assignments of the mortgages to him before the deed to Parks was recorded, the record of the mortgages and of the assignments thereof were all in full force and undischarged, and as appeared of record; and the recording of the assignments made before the release of the mortgages, made the record show that the release was fraudulent. *Jackson v. Post*, 15 Wend., 588; *Van Rensselaer v. Clark*, 17 Wend., 25.

The following opinion was filed at the June term, 1870:

COLE, J. If we assume that the quit-claim deed containing the release of the two mortgages was fraudulent and void, so far as *William H. Pierce* is concerned, and that *Parks* is an innocent purchaser, for a valuable consideration, how then would the case stand under the recording acts? That quit-claim deed was executed by *Blanchard*, the mortgagee, to *Pierce*, August 10, 1859, and recorded December 8, 1860. The mortgages were assigned by *Blanchard* to Rice, previously, April 2, 1859; but those assignments were not recorded until June 21, 1861. Assuming these as facts clearly established, the evidence that Pierce had full notice when the quit-claim deed was executed by Blanchard to him, of the prior assignments of the mortgages, and that the land in his hands was subject to those liens, what is the position of his grantee, *Parks*, who purchased without notice of such assignments, and before they were recorded? It appears that *Parks* purchased the mortgaged premises September 19, 1860, though his deed was not recorded until January 10, 1868. And therefore the question is, whether the assignments to Rice, being made before the deed to *Parks*, and recorded after, but before that deed was recorded, shall have priority over that deed, the mortgage being apparently discharged when that deed was given, but

not when it was recorded? It is claimed by the counsel for the respondent, that *Parks* could only acquire a preference by recording his deed before the assignments were recorded. We are referred, in support of this position, to the cases of *Jackson v. Post*, 15 Wend., 588; *Van Rensselaer v. Clark*, 17 do., 25, and *Foot v. Burch*, 5 Denio, 187. Without stopping to analyze these cases, it seems to us a sufficient comment to make upon them, to say that they establish a rule different from, and in conflict with the one laid down by this court in *Ely v. Wilcox*, 20 Wis., 523. In this latter case, the New York rule referred to, which holds that the record of a prior deed, though not recorded till after the second deed, and before the conveyance by the vendee in the second deed, is notice to a purchaser from him, not only of the first deed, but such notice that he is bound to inquire whether the grantee in the second deed was a *bona fide* purchaser, and that rule is disapproved, as carrying the doctrine of constructive notice to an unreasonable extent. It is true there is a difference between the case of *Ely v. Wilcox*, and the one under consideration, that the deed from Matson and wife to Ely, of January 23d, 1856, which was in due form of law, was subsequent in date, and was upon record when the fraudulent grantee, Nathaniel G. Wilcox, conveyed the property to Timothy D. Wilcox, while here, when *Parks* purchased the premises in September, 1860, neither the assignments of the mortgages by *Blanchard* to Rice, nor the quit-claim deed executed by *Blanchard* to *William H. Pierce*, were upon record. But still we cannot see that the assignee of the mortgages can derive any advantage from this circumstance, since the assignments were not then recorded, and were not, in fact, recorded until after the conveyance to *Parks* and the quit-claim was upon record. Besides, *Parks* testifies that when he purchased of *William H. Pierce*, he delivered to him this quit-claim deed, and that he bought upon the faith of that deed, believing the mortgage upon the property actually released by that instrument. Of course, as already observed, there was nothing

upon record to give notice to *Parks* of the fraudulent character of this quit-claim deed, and that *Blanchard* had no right to release the mortgages upon the property. There was produced and shown him a good and sufficient release of the mortgages executed by *Blanchard*, the mortgagee. And while in this condition of the record, *Pierce*, the fraudulent grantee in the quit-claim deed, conveys the mortgaged premises to *Parks*, a *bona fide* purchaser, without notice of the assignment of the mortgages. Does he not take the property discharged of those liens? It seems to us that he is to be protected by the rule that if one purchases *bona fide* for a valuable consideration, without notice, from a fraudulent grantee, he takes a valid title, and is not affected by the notice of his grantor. See Mass. cases cited in *Ely v. Wilcox.* In this case, if *Parks* had not purchased until after the assignments were recorded in June, 1861, the quit-claim deed having been recorded in December, 1860, when it in fact was, then he would come fully within the doctrine laid down in *Day v. Clark*, 25 Vermont, 402, and be protected. The doctrine of this case is approved in *Ely v. Wilcox*, as containing a more reasonable rule than that laid down by the New York cases. And we are unable to perceive any valid ground for holding that *Parks* is now in a worse position, having purchased the mortgaged premises in September, 1860, when he did without notice of the assignment of the mortgages by *Blanchard*, and believing that those incumbrances had actually been released by the quit-claim deed, than he would have been if he had not purchased until after 21st of June, 1861. Section 25, chap. 86, R. S., which provides that every conveyance of real estate within this state thereafter made, which shall not be recorded as provided by law, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded, obviously applies to successive purchasers of the same real estate, from the same seller, and must be limited to cases of that description. *Raynor v. Wilson*, 6 Hill, 469.

But again, it is said that *Parks* is not entitled to protection as an innocent purchaser, because he does not fully state in his answer what he gave for the land, and how and when this consideration was paid. He was permitted to prove, and did, in fact, prove the actual consideration paid, which was, as he stated, $6,000, in notes he held against *William H. Pierce*, and $1,000 in money. This evidence was without objection, and it seems to us too late now to object that the answer was insufficient for not stating what the precise consideration was, and how and when paid. Manifestly if any such point had been made on the trial, the court would, upon application, have permitted *Parks* to amend his answer, so as to obviate the objection. We are, therefore, inclined to hold the answer good, as no point was made upon it in the court below.

We do not notice the other questions discussed by the counsel, since the point decided is fatal to the judgment.

*By the Court.* The judgment of the circuit court is reversed and the cause remanded for further proceedings.

A re-hearing having been allowed, the following opinion was filed (upon the first re-hearing) at the June term, 1871:

COLE, J. This case presents a question of some importance in relation to the proper interpretation of the registry acts. A re-hearing was granted upon a point determined in the former opinion, where it was held that *Parks* must be protected under the recording acts, as it appeared from the evidence that he was a purchaser for a valuable consideration, without notice, either actual or constructive, of the assignment of the mortgages by the mortgagee, *Blanchard*, to *Rice*. The learned counsel for the respondent insists that he is not to be protected, for the reason that he failed to put his deed upon record before the assignment to Rice was recorded. This view of the law was strongly pressed upon our consideration on the former hearing, but was deemed unsatisfactory then, and we now think, after fuller

examination and consideration, must be overruled. For, as was previously observed, it is very evident that when *Parks* took his conveyance from the fraudulent grantee, *William H. Pierce*, he had no notice of the assignment of the mortgages, and he purchased upon the faith and credit of the quit-claim deed containing a release of those mortgages which had been executed by *Blanchard* to his grantor. This original quit-claim deed was delivered to him, with the conveyance from *William H. Pierce*, and was placed upon record more than six months previous to the recording of the assignment. There was nothing then of record to inform him that the mortgages were still unpaid and held by some assignee; he had no means of learning that fact, owing to the neglect of the assignee to place the assignment upon record; and he parted with his money, under the full expectation that he was getting the property discharged from those incumbrances.

Under these circumstances, the substantial equity of the case would seem to be in favor of *Parks*, and require that his title should prevail. For, again, to re-state the facts in a few words, the case is simply this: *Blanchard*, the mortgagee, assigns the mortgages to Rice, who fails to record the assignment. *Blanchard* afterwards conveys the mortgaged property to the mortgagor, *William H. Pierce*, by a quit-claim deed, which contains a release of these mortgages. *William H. Pierce* then conveys the property to *Parks*, a purchaser in good faith, for a valuable consideration, who has no notice whatever that the mortgages were assigned by *Blanchard* to any one, and who had no means of ascertaining that fact, because the assignment was not recorded until some nine months thereafter, and some six months after the quit-claim deed and release were placed upon record. True, the assignment is recorded before *Parks* placed the deed to him upon record. But it is difficult to perceive how the default of Rice can be made good by this subsequent record, after *Parks* has parted with his money and purchased the property, supposing he was getting a good title. The record of the assign-

ment in June, 1861, could be of no possible service to one who purchased the property in September, 1860. " The object of the record is to give notice, and notice must always be too late after value has been paid and a deed executed." 2 Leading cases in Equity, Hare & Wallace, note, page 182.   Chief Justice- SHAW in *Flynt, Administratrix, v. Arnold*, 2 Met., 619–623, states with great clearness and ability some of the practical consequences resulting from the view there taken of the registry acts of Massachusetts, as follows : " If a prior conveyance is recorded at any time, however late, before a subsequent conveyance is made by the same grantor to a second grantee, the registration of the deed is conclusive legal notice to the second grantee of such prior conveyance ; so, if the first conveyance is not put upon record before the second is executed, still, if the second grantor have actual notice of the prior deed, he takes subject to it.  So, if the second deed is put on record before the first, if a *bona fide* purchaser, without actual notice of the first conveyance, and before the same is put on record, take a conveyance of the second grantee, he takes a good and indefeasible estate as against the first grantee, because he takes an apparent valid title without actual or constructive notice of any prior conveyance.   So any other person taking under such indefeasible conveyance derived from a purchaser of the second grantee without notice, would have a valid title.   But if, before any such valid title is acquired by any one under such second grantee, the first deed is recorded—as registration is regarded as constructive notice of a conveyance to any one claiming under the second grantee—such registration would be constructive notice of the evidence of such prior conveyance." These remarks are quite pertinent to the questions we are considering.

The doctrine of constructive notice from the record of a prior deed, although not recorded until after the record of a subsequent conveyance, has been carried somewhat further by the courts of New York than in Massachusetts and some of the

other states, but it is only necessary to again repeat that the principle of the New York decisions, is distinctly disapproved in *Ely v. Wilcox.* Indeed the whole reasoning and doctrine of the latter case — if I understand them aright — when applied to the facts before us, protect the title of Parks against the unrecorded assignment of the mortgages. But it is said in answer to this view, that as between the assignee Rice and *Parks* the purchaser from the fraudulent grantee of *Blanchard,* that the one who records first must have the priority, and that inasmuch as the assignment was actually recorded before the deed to *Parks* was placed upon record, the latter took the property subject to the mortgages, and this result it is claimed follows from the operation of section 25, chap. 86. This section, it is argued, where each is a purchaser in good faith, the equities being equal, gives the title to the party whose deed is first recorded without regard to the person of whom the purchase is made. In the former opinion it was decided that this was not a sound interpretation of this section, or at all events we are disposed to give it a more limited construction. We followed mainly the decision of *Raynor v. Wilson,* where, as we understood, the opinion of the court holds that a precisely similar section in the New York statute is not to be taken literally in favor of any subsequent purchaser of the same real estate, but applied to successive purchasers from the same seller. At least we did not suppose that it was the object or effect of this provision to so change the general principles of the recording act, as to postpone the title of *Parks* upon the facts disclosed in this case, to that of Rice, because he had not put his deed upon record before the assignment was recorded. Because when he purchased of *William H. Pierce,* the assignment was not on record, and he had an apparent valid title, without any notice of that assignment. And, as observed, this assignment was not in fact recorded until about nine months after he took his conveyance, and six months after the recording of the quit-claim deed containing the release. Had Rice been diligent in placing the assignment on record, no

loss could have happened to any one. But in consequence of his default, the rights of a *bona fide* purchaser have intervened, which ought to be protected. And it seems to us that the clear equities of the case are in favor of the title acquired by *Parks.* We therefore adhere to the former opinion, without dwelling on the case longer.

*By the Court* — The judgment of the circuit court is reversed, and the same remanded for further proceedings.

The following opinion, granting a second re-hearing, was filed at the June term, 1872 :

DIXON, C. J. A motion for a re-hearing denied is a bar to a second motion for the same purpose by the same party. This was so decided by this court several years ago, in an unreported case. But a motion for a re-hearing granted, and upon which the cause is again placed upon the calendar and re-argued and again submitted and decided, cannot have the same effect, and that is the question here presented. The effect of granting the motion is that the first judgment is set aside and the entry vacated, and the cause goes upon the calendar like any other, and is to be heard and considered as if it had never been argued or decided. The granting of the motion annuls all previous proceedings, and gives to the cause the complexion and features of a fresh action in this court, and it must be treated and governed accordingly. It is not in the nature of estoppel by order or judgment, that the granting of such a motion should operate to preclude the party who made it, from making another like motion when the cause has again been argued and decided. Upon this point the members of this court are all agreed, from which it follows that the motion of the plaintiff, for a re-hearing, must be considered, and the motion of the defendants to strike the same from the files for irregularity, and because no such second motion can be made, must be denied.

A further consideration of the question presented, and upon

which this cause has been already twice decided, and which, including the argument upon this motion for a re-hearing, has been four times argued before this court, has fully convinced me that this court was in error in both decisions, and consequently, that the present motion ought to prevail. The chief struggle, or one of the chief struggles of the court in this case, has been to maintain its own consistency and so to lay down and expound the law of the case as not to conflict with what was said as by the court in *Ely v. Wilcox*, 20 Wis., 529, 530. The decisions already made, manage that point very well, but the trouble, in my judgment, is that what was there said is not sound and not law, and never ought to have been said at all; and I am the more free to express this conviction, since I find the very judge who wrote that opinion, in the person of the learned counsel for the plaintiff in this cause, who now so stoutly and ably confronts and combats the correctness of the rule there laid down. What was there said about the record of a *prior* deed not recorded till *after* the *second* deed from the same grantor and *before* the conveyance by the vendee in the second deed, *not* being notice to the purchaser from the vendee in the second deed, must be regarded only as an expression of the views of the judge who wrote the opinion, and not as a point in decision or question ruled in any matter determined by the court. An examination of the case will show that no such question was presented by it, and, as of course, that nothing of the kind could be decided in it. That case presented only the question whether an *after executed*, as well as an *after recorded* deed, could operate as constructive notice to the purchaser, and it was held it could not. All that was said upon the other question which was *not* presented was, therefore, purely and wholly *obiter*, and the history of the case at bar strongly exemplifies the dangerous character and tendency of such *dicta*. As a member of the court at the time that case was decided, I know that the point was not considered or attempted to be adjudged by the court, and but for what thus

irregularly found its way into the opinion, I am quite satisfied that the history of this case would have been very different.

The question, whether a purchaser from a second grantee, whose deed was first recorded, is bound to take notice of the record of a prior deed from the same grantor to another person, subsequently recorded, and before the time of such purchase, is one obviously depending upon the phraseology and proper construction of the statute law requiring deeds and other conveyances of lands to be recorded, and declaring the effect of the omission, when the same are not so recorded.    Even in Massachusetts, where the statute differs materially from our own, the rule upon this point is not, now held as stated by Judge DOWNER, in *Ely v. Wilcox*.   See opinion of Chief Justice SHAW, in *Flynt v. Arnold*, 2 Met., 622, 623, 624.   The earlier decisions in that state, referred to in *Ely v. Wilcox*, as holding a different rule, and that the subsequent record of the prior deed, before conveyance, by the second grantee, to a purchaser from him, was not notice to such purchaser, if not expressly overruled, are so far criticised, and their incorrectness shown by the reasoning in the opinion, that they can no longer be regarded as expressing the true rule of law, in the court by which they were pronounced.

In order that the difference of statutes may be plainly seen, I copy those of Massachusetts and Vermont, and then our own.

" No bargain and sale, or other like conveyance, of an estate in fee simple, fee tail, or for life, and no lease for more than seven years from the making thereof, shall be valid and effectual, against any person other than the grantor and his heirs and devisees, and persons having actual notice thereof, unless it is made by a deed recorded as aforesaid."   Genl. Sts. Mass., 1860, p. 466, sec. 3.   Rev. Sts. Mass., 1836, p. 407, sec. 28.

" No deed of bargain and sale, mortgage, or other conveyance, in fee-simple, fee-tail, or for term of life, or any lease for more than one year from the making thereof, of any lands in this state, shall be good and effectual in law, to hold such lands

against any other person but the grantor, and his heirs only, unless the deed or other conveyance thereof be acknowledged and recorded according to the provisions of this chapter." Rev. Sts. Vt. 1840, page 312, sec. 6. Compl'd Sts. Vt. 1850, p. 384, sec. 6. Genl. Sts. Vt. 1862, ed. 1870, p. 448, sec. 7.

" Every conveyance of real estate within this state hereafter made, which shall not be recorded as provided by law, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, *whose conveyance shall first be duly recorded.*" R. S. c. 86, § 25. 2 Tay. Sts., 1147, § 27.

Sections thirty-four and thirty-five of the same statute, read as follows :

"Section 34. The term ' purchaser,' as used in this chapter, shall be construed to embrace *every* person to whom *any* estate or interest in real estate shall be conveyed for a valuable consideration, and also every assignee of a mortgage, or lease, or other conditional estate.

" Section 35. The term ' conveyance,' as used in this chapter, shall be construed to embrace *every* instrument, in writing, by which *any* estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands." The same, 2 Tay., Sts., 1149, 1150, §§ 39, 40.

It will be seen by reference to the opinion of Chief Justice Shaw, above cited, 2 Met., 622, who traces the history of the legislation in the colony and state of Massachusetts, that the statute of Vermont is in substance the same as the Massachusetts statute of 1783 and the provincial statute 9 Wm. III, c. 7. Those statutes were construed as excluding from their protection purchasers having notice of the prior unregistered deed, which judicial construction was subsequently established by express enactment, as we now find the statute of Massachusetts

to be.    The courts of Vermont have always given the same construction to the statute of that state.

Now the great and remarkable difference between our statute and the statutes of those states, and which, as it seems to me, must lead to a difference of construction, arises from the employment of and the effect which must be given to the words which I have above put in italics, namely, "whose conveyance shall first be duly recorded?"    This is a condition not found in them, but superadded in ours, and which must be complied with by the subsequent purchaser in good faith and for a valuable consideration, before he can claim the benefit and protection of the statute.    Without the deed to such a subsequent purchaser *first upon record*, the title under the prior unregistered deed must still be preferred.    Under the statutes of the states to which reference has been made, this is not so.    It is enough there that the subsequent purchaser for a valuable consideration and without actual notice, looks upon the record at the time of purchase and finds no conveyance from his grantor then recorded. He is not required to put his deed first upon record in order to be protected as against *prior* conveyances from his grantor, but only to do so in order to protect himself against *subsequent bona fide* purchasers for value, from the same grantor or in the line of recorded conveyances from him.    Accordingly in those states the courts hold that if A. conveys to B., a *bona fide* purchaser of real estate for value who fails to put his deed upon record until after A. conveys the same land to C., a second *bona fide* purchaser for value, and B. then puts his deed on record before C. records his, that the title of C. shall nevertheless prevail as between him and B., because it is the fault of the latter that he did not immediately record his deed, and so the equities are with C.    But under our statute this cannot be so, because C. must not only be a subsequent *bona fide* purchaser for value, but must also have had his deed first duly recorded.    Both conditions of the statute must be complied with.

But in those states, also, let another case be put which will be

equally applicable under our own statute, and serve, as it seems to me, to illustrate the true principle upon which this case ought to be decided. " Suppose, for instance, A. conveys to B., who does not immediately record his deed. A. then conveys to C. who has notice of the prior unregistered deed to B. C.'s deed, though first recorded, will be postponed to the prior deed to B. Then suppose B. puts his deed on record, and afterwards C. conveys to D. If the above views are correct, D. could not hold against B.; not in right of C., because, in consequence of actual knowledge of the prior deed, C. had but a voidable title; and not in his own right, because before he took his deed, B.'s deed was on record, and was constructive notice to him of the prior conveyance to B. from A., under whom his title is derived." The foregoing is from the opinion of Chief Justice SHAW, above referred to, and exactly fitst he facts of the present case, and shows that the title of the present plaintiff ought to prevail. But under our statute, the case of B., who answers to the plaintiff in this action, is in reality much stronger by reason of the emphatic words above quoted. B. combines in himself all the conditions requisite by statute to give him a perfect title. He is a purchaser in good faith for a valuable consideration, whose deed is first recorded. D., even supposing B.'s deed on record was not constructive notice, which I cannot believe to be the law under our statute, fulfills one condition of the statute only, namely, that of being a subsequent purchaser in good faith for a valuable consideration, but fails entirely to show compliance with the other condition, to-wit, that his deed was first duly recorded. A compliance with the first of these requirements is wholly unavailing, unless it is at the same time shown that the other has been likewise observed by the subsequent purchaser claiming the protection of the statute.

But there is another view of this question, which, as it seems to me, affords even yet stronger proof of the error of the former decisions. In order to maintain those decisions, it was necessary for the court to adopt and follow the *dictum* in *Ray*-

*nor v. Wilson*, 6 Hill, 473, and like *Ely v. Wilcox*, it was a mere *dictum* and not a point in any manner involved in the case, and to hold that although the statute speaks of *any* and *every* subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, yet it does not mean what it plainly says, and is to be applied only to successive purchasers of the same real estate from the same seller. This is forcing the statute, and violating a most well settled and cardinal rule of statutory construction, that general words must receive a general construction unless there is something in the same or some other statute *in pari materia* and operating on the same subject to restrain them. This seems to me very obvious upon the language of section twenty-five alone, but much more so when that of sections thirty-four and thirty-five, defining the terms "purchaser" and "conveyance," are taken into consideration.

I cannot, I must confess, in view of the past decisions of this court upon this rule of construction, and in view of the same, as it has generally been received and acted upon by other courts, hold that the statute in question can be judicially forced—for I can use no other term—so that it shall be limited to a particular class of purchasers, only when by its very words, clear and unambiguous, it applies to all purchasers of the kind named in it. Upon this rule of construction, see *Harrington v. Smith*, 28 Wis., 43, and authorities cited; *Encking v. Simmons*, 28 Wis., 272, and *Buffham v. City of Racine*, 26 Wis., 451, *et seq.*, where numerous authorities are collected. And upon the same question, also, and as particularly applicable to the statute under consideration, I commend the cases of *Kennedy v. Northrup*, 15 Ill., 148, and *McClure v. Tallman*, 30 Iowa, 515. The only limitation which can be put upon the statute is, as suggested in *Kennedy v. Northrup*, that which the manifest object of the law plainly indicates, namely, that it is to be so construed as to exclude from its protection those who may purchase from strangers to the title. Those persons only are affected with

Fallass, Administrator, vs. Pierce and others.

notice by the record, who deal with or on the credit of the title, in the line of which the recorded deed belongs. *Maul v. Rider*, 59 Pa. St. R., 167, 171. I am of opinion, therefore, that the cases of *Fort v. Burch*, 5 Denio, 187, and *Wood v. Chapin*, 13 N. Y., 509, furnish the true rule of construction, and that those of *Jackson v. Post*, 15 Wend., 588, and *Van Rensselaer v. Clark*, 17 Wend., 25, lay down the correct doctrine as to constructive notice under our statute.

For these reasons, I am of opinion that the motion for a rehearing should be granted, and the cause placed upon the calendar in its proper order, and argued and submitted without further order or notice. In this order, Mr. Justice Lyon concurs, although he expresses no opinion upon the merits of the case.

From this conclusion Mr. Justice COLE dissents, holding, for the reasons stated in the former opinions, that the cause has been already correctly decided, and that no re-hearing should be granted.

*By the Court*—A re-hearing is ordered accordingly.

Upon the second re-hearing, *Palmer, Hooker & Pitkin*, and *H. Pierce*, for appellant, argued that the recording act, sec. 25, chap. 86, R. S., afforded plaintiff no relief, since it was not applicable to questions arising between the assignee of a mortgage and the purchaser of the equity of redemption, but was only applicable as between purchasers of "the same real estate." A subsequent purchaser, in good faith, of "the same real estate," as to the mortgage, is a purchaser of the mortgage, and not of the premises.

A purchaser of the premises has, by the recording act, constructive notice of all subsisting prior mortgages duly recorded, whether in the hands of the mortgagee or his assignee; and it matters not whether the assignment be recorded or not. The mortgage is the lien upon the land, not the assignment. In this case *Parks* had notice of the mortgages, but he also had

notice that they were satisfied. He had constructive notice that the mortgage estate had been created, and he had actual knowledge that it had been extinguished. *Campbell v. Vedder*, 3 Keyes, 174; *Purdy v. Huntington*, 42 N. Y., 334.

Counsel further contended, that if the law was correctly stated in *Ely v. Wilcox*, then the superiority of title under the recording act, as between plaintiff and defndants in this case, is not dependent upon the date of executing or recording the assignment to the assignor of Carrie J. Fallass, and the deed to defendant, but upon the date of the execution and record of the assignment and release from *Blanchard*, under whom, as to the mortgage, both parties claimed to derive their rights.

In *Day v. Clark*, 25 Vt., 397, the court say: "It has long been settled that if a fraudulent conveyance is made, and the fraudulent grantee conveys to a *bona fide* purchaser, without notice, his grantee takes a valid title; and if the grantee has notice at the time he purchases, of an outstanding, unrecorded deed, it will not do to affect his grantee with such notice unless he knew that the grantor had such notice at the time he purchased. Unless this is shown, he has a right to rely upon the record title." Applying the foregoing, long settled. proposition to the facts of this case, the title of *Parks* necessarily supercedes that of the plaintiff.

In Massachusetts, the courts hold that "one who takes a conveyance of land knowing that the grantor had previously conveyed it to another, cannot hold it against the first purchaser, although the first conveyance be not recorded. But if the second purchaser produces his deed to be recorded before the other, and then sells the land *bona fide*, and for a valuable consideration, to a person wholly ignorant of those circumstances, the latter will hold the land against the first purchaser;" and that "when a purchaser is examining his title in the registry of deeds, and finds a good conveyance to his grantor, he is not expected to look further." *Connecticut v. Bradish*, 14 Mass., 296; *Trull v. Bigelow*, 16 Mass., 418; *Somes v. Brewer*, 2 Pick., 184. The

only difference between the Massachusetts cases and this, lies in the fact that in the former the purchaser acted upon the constructive notice afforded by the records, while here the purchaser, *Parks*, had actual knowledge of the release of the mortgages, the original instrument of release having been delivered to him at the time of purchase.

*Jason Downer*, for respondent, argued that the recording act had altered the common law, by providing that a prior unrecorded deed should lose its priority over subsequent conveyances, made in good faith and for valuable consideration, and first put upon record. The statute not only embraces immediate grantees from the same seller, but extends to all persons claiming under the subsequent grantee, or either of the grantees of the grantor, who is the common source of title. *Ledyard v. Butler*, 9 Paige, 132 ; *Jackson v. Town*, 4 Cowen, 405 ; *Wood v. Chapin*, 13 N. Y., 514 ; *Pardy v. Huntington*, 46 Barb., 398 ; *Fort v. Burch*, 5 Denio, 187 ; 11 Paige, 28–39. This court seems to have followed the decisions of New York, as they were under the recording acts previous to 1828, which gave priority to an absolute deed over a mortgage, unless it was recorded at the time of purchase. See *Jackson v. Campbell*, 19 Johns., 283 ; *Hawley v. Bennett*, 5 Paige 111 ; 11 Paige, 28. But after the decision, in 19 Johnson, the New York statute was changed, and their recording acts and ours, have for many years been substantially the same ; hence the construction of the New York statute is binding here.

This is a case between two innocent *bona fide* purchasers, and their equities being equal, the statute gives the priority to the one whose deed is first recorded ; or rather says the first conveyance shall be void as against the second *bona fide* grantee " whose conveyance shall be first duly recorded." The second *bona fide* grantee, or those under him, has no rights against the first grantee, or those claiming under him, either by the statute or common law, unless his deed is first duly recorded. The case is not dependent upon the good faith of Rice or Parks,

or on a question of constructive knowledge from the records to either, since both are clearly proved to have been *bona fide* purchasers. Hence all that is said by this court about the case of *Ely v. Wilcox*, or upon the question of constructive notice, is inapplicable here.

Dixon, C. J.   A second motion for a re-hearing having been granted in this case, with the concurrence of Mr. Justice Lyon, the same has again been argued and is now submitted for final adjudication.   Having, upon that motion, examined the principal question involved in the case, to my own satisfaction, I prepared and filed an opinion expressing my views with respect to it, and which appear from the opinion above printed.   Mr. Justice Lyon now fully concurs in the views there expressed, which results in their being adopted as the views of the court. Such being the opinion of the majority of the court, and present attitude of the case, it would seem almost superfluous to enter again or more at large into the discussion of the question, and I should not think of doing so or making any further observations at all, but for the course which the argument took at the bar with regard to the case of *Ely v. Wilcox*, and to the real point of decision involved in it.

Counsel for the defendants seem to suppose that I had mistaken the facts of the case, and that there may be no misapprehension I will, omittting all immaterial circumstances and particulars, re-state them here as I find them stated in the argument of the same learned counsel on the first motion for a rehearing, and which I have no doubt was a correct statement of them.   *Pierce*, the owner of the lands, mortgaged them to *Blanchard*, which mortgage was recorded.   *Blanchard* assigned the mortgages to Rice, which assignments were not recorded. Then *Blanchard* quit-claimed and released from the lien of the mortgages back to *Pierce*, *Pierce knowing of the assignments to Rice*, which quit-claim and release was recorded.   Afterwards *Pierce* conveyed to *Parks*, a purchaser in good faith and for a

valuable consideration, *who neglected to record his deed until after the assignments to Rice were recorded*, and in fact until after the assignments of the same mortgages by Rice to Carrie J. Fallas, the plaintiff's intestate, were made and recorded. No question is made as to the good faith of the assignments from *Blanchard* to Rice, or from the latter to the plaintiff's intestate. Such is the most favorable statement of the case which can be made for the defendant *Parks*, since in fact the quit-claim and release from *Blanchard* to Pierce was not recorded until nearly two months after his purchase from Pierce.

It was strenuously insisted by counsel for the defendants, upon the last argument, that the position taken by counsel for the plaintiff, and the construction now given to the statute, cannot be maintained without disregarding in every particular, and overruling in the very point of decision, the case of *Ely v. Wilcox.* Counsel for the defendants said, that upon the facts of that case, Ely was the *bona fide* purchaser for value, (in reality the first in point of time to purchase) *whose deed was first recorded*, and, consequently, if the construction now given be the correct one, his title should have been preferred to that of the opposing *bona fide* purchaser for value, Timothy Dwight Wilcox, the date of whose purchase, and the execution and recording of whose deed was more than three months later than the recording of the deed to Ely. In view of the particular facts of that case, and of what I then did, and still do conceive to be the true construction of the statute, I was not then prepared to say, that this argument either had been or could be successfully met or answered. The peculiarity of the case was, that Matson, the grantor of both Ely and Nathaniel Green Wilcox, the fraudulent grantee, had, by a deed good, as between the parties, though not acknowledged so as to entitle it to be recorded, conveyed the land to Ely nearly ten months before the conveyance to Nathaniel Green Wilcox was executed. Nathaniel Green Wilcox had knowledge of such previous deed to Ely, at the time he took his conveyance from

Matson, and, consequently, knew that Matson had *no title* which he could convey. He knew that the legal title was then in Ely; and when Ely subsequently obtained a second deed from Matson, which was properly acknowledged, so as to entitle it to record, and was, in fact, recorded before any conveyance from Nathaniel Green Wilcox was executed and recorded, ought it not to have been held, that Ely was the *bona fide* purchaser for value, who fulfilled, in his own person, both the requirements of the statute, namely, of being such purchaser and of having his deed first duly recorded? I must say, I could not then see my way very clearly out of this dilemma, and likewise that it seemed to me the learned counsel for the plaintiff failed to make it clear in his argument at the bar.

It is true, that this result is arrived at only by connecting Ely's title under the second deed with that acquired by him under the first, of which Nathaniel Green Wilcox had notice, or by considering the title under both deeds as one and the same, the second deed being supposed to operate back upon the title conveyed by the first, in the nature of a further assurance. It is true, likewise, that the statute speaks only of a *subsequent* purchaser in good faith and for a valuable consideration, whose conveyance shall be first duly recorded, and seems to aim only at the protection of such a purchaser and not at the protection of a *prior* purchaser, whatsoever the character of his purchase may have been with respect to the exercise of good faith or the payment of value by him. Indeed, the object of the statute seems to be to protect the *subsequent* purchaser in good faith for value at the expense of the *prior* one, and to cut off and destroy the title of the latter, regardless of every other consideration, when his conveyance has not been recorded before that of the former shall be. Such being the purpose of the statute, it may be that the character or capacity of Ely as a *prior* purchaser, even in good faith for value, under a deed *not recorded*, and which in form as acknowledged, never could have been, ought not to have been taken into consideration in determining the question.

With respect to the facts as they appeared before the court, and were known to Nathaniel Green Wilcox, Ely stood in the double relation of both a *prior* and *subsequent* purchaser. With respect, however, to the record or registry of deeds as it was known or required to be noticed by a purchaser from Nathaniel Green Wilcox, Ely occupied the position of a *subsequent* purchaser of the same land from the same grantor, by a deed executed and recorded, *not first*, but *after* the conveyance to Nathaniel Green Wilcox was executed *and recorded.* It may be it was only in such character of *subsequent* purchaser and as he appeared of record in the register's office with his deed, not only *after* executed but *after* recorded as well, that the rights of Ely were to be considered; and, if that was so, then it would seem that the question was rightly decided, because to the case of such a subsequent purchaser, the statute has no application. The statute applies to and protects only the subsequent purchaser in good faith for value whose deed shall be *first* duly recorded. Ely's deed was *not first* recorded, (by this I mean of course his second deed which was the only one entitled to consideration with respect to the registry law and its operation upon the title,) and consequently he was not of that class of subsequent purchasers whose deeds *being first* recorded are protected by the statute.

Looking at the registry, therefore, and considering the title as it then appeared, and comparing that of Nathaniel Green Wilcox with that claimed by Ely, the title of Ely had accrued and was held by a deed junior in time and junior in record to the deed to Wilcox, which, both by the common law and by the statute, made the title of Wilcox the superior and only true and real title. To a person, therefore, purchasing from Nathaniel Green Wilcox, and who, looking upon the record, saw the deed to Ely and the date of its being recorded, but who had no other information respecting the title than such as the registry afforded, the fact was or would have been that Ely had *no title* as against Wilcox. It would have been regarded as of

course, that the deed of later date and later record could not prevail or convey any title against the earlier deed first recorded. Such being the information, conveyed by the record, to the purchaser from Wilcox, that Wilcox had the title and that Ely had none, either by the common law or by the statute, it would seem to follow that the purchaser might pass by Ely's deed and the registry of it, and treat them as so much waste paper, which gave Ely no interest in or claim whatever to the land. And under the same circumstances also, Ely assenting to and acquiescing in the condition of the record, suffering it to remain thus and taking no steps to correct it, or to cause his paramount right to appear, it would seem likewise to follow that the purchaser from Wilcox was under no obligation to pursue or to make any inquiry as to what right or title, paramount or otherwise, Ely might by possibility have been supposed to claim under his deed. If the views here suggested are correct, and I must say I do not now see wherein they are not, then they are the key which unlocks the mystery of *Ely v. Wilcox*, and which seems to explain and establish the consistency of the court, both in that decision and the present one.

And in the same connection, I desire furthermore to observe, that the " good faith of the subsequent purchaser, spoken of by the statute, signifies no more than that he shall be ignorant, or shall purchase without any knowledge or information of the existence of the prior *conveyance*. The statute presupposes the execution and delivery of a prior conveyance, which passed the title or some interest in the land, but which the grantee therein has neglected to record, and then proceeds to enact that such conveyance shall be void, as against any subsequent purchaser in good faith, for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall first be duly recorded. The " good faith," therefore, which will sustain the conveyance of the subsequent purchaser and enable him to transmit a valid title to his grantees, or the want of it, or that *bad faith*, which will avoid such conveyance, originates,

the former, in absence of any knowledge or information on his part as to the execution and delivery of the prior conveyance, and the latter, in the presence of such knowledge or information, and the possession thereof by him at the time of his purchase. The construction of the statute, and the effect to be given to it, are, therefore, the same as if it had read, "shall be void as against any subsequent purchaser not having notice of such unrecorded conveyance," or "without notice of such unrecorded conveyance." Bad faith in any other respect, or any other species of fraud or dishonesty, on account of which the conveyance of a purchaser may be set aside or annulled and his title taken away or avoided in favor of some third person, the party defrauded, whose claim or interest, legal or equitable, was prior and superior to that acquired by the purchaser, is not the kind of bad faith intended by this statute.

The bad faith here intended, or the want of that "good faith" mentioned in the statute, arises solely from notice of the prior unregistered conveyance. By this, I do not of course mean to exclude notice arising from a knowledge of other facts, which ought to put the purchaser upon inquiry as to the existence of a prior unrecorded deed, if one has been made. I do not mean to say that knowledge that the seller has previously bargained with, and received payment for the land from another, will not put the purchaser upon inquiry and charge him with notice of the existence of the prior deed, if one has been executed, though he may not have actual knowledge of that fact. The "good faith" of the statute consists in the absence of such notice, and hence, in order to give any effect to the statute, or to bring it into operation at all, there must always exist *the prior unrecorded conveyance* at the time the subsequent purchase takes place. Without such prior unrecorded conveyance, there can be no "subsequent purchaser" within the meaning of the statute, and nothing whereon to found the proposition of either good faith or bad faith in the sense spoken of by it.

To illustrate my views, and make the subject more clear, let

it be supposed that A, the owner of the land, has sold it for a valuable consideration to B., but has executed no conveyance. He has given to B. an agreement to convey, which is valid and sufficient in law, and B. has paid the consideration in full. C., with knowledge of the facts, applies to A. for a conveyance, and A. gives it to him, either with or without the payment of a valuable consideration, and C. thereupon immediately causes the same to be recorded. To such a case the statute has no application. The conveyance to C., and his title, though voidable at the suit of B., on account of C's fraud and bad faith, arising from the knowledge he had of B's prior and better right, cannot be avoided under this statute. If subsequently B. obtains from A. a conveyance of the same land, and records it, without procuring a release from C., or causing his conveyance to be set aside, such record of B's deed will operate as no obstruction or impediment in the way of C's afterwards conveying and giving valid title to a purchaser for value from him who has not actual notice of B's claim, and who causes his conveyance to be duly recorded. This statement is of course made on the supposition that no action has been commenced by B. against C. to avoid C's deed, and no *lis pendens* filed which may operate as notice to the purchaser from C.

Now it may well be in the *Ely and Wilcox* case, Ely's first deed being, in contemplation of law, unrecorded and incapable of record until further acknowledgment, or until the proper certificate that the Minnesota notary was such, and that his signature was genuine, was procured and attached thereto; that Ely's situation with respect to the registry act and its operation to protect his prior and paramount right or title *through the second deed*, executed by Matson to himself, which was of later date and later record than that to Nathaniel Green Wilcox, was no better or no more favorable to him as against a subsequent purchaser from Nathaniel Green Wilcox, for value, and without actual notice of the defect in his, Nathaniel Green's, title than was or would be the situation of the first purchaser B. in

the case above supposed, as against a subsequent purchaser for value from C., buying with no actual knowledge or information of B.'s superior claim or right, and where C.'s deed from A., the common source of title, was not only the first executed but the first to be recorded. It would seem, therefore, that the true position of Ely, when considered with reference to the provisions of the statute under consideration, and to the rights which were or might be·acquired by a purchaser in good faith, for value, from Nathaniel Green Wilcox, was that of *subsequent* purchaser from Matson, whose deed was *subsequently* recorded, as compared with the purchase, execution and recording of the deed from the same grantor to Wilcox. Such I regard as his position, and consequently that the case was rightly decided. I think his rights were properly adjudged, to stand or fall by his second deed, as being for the purposes of the action the *commencement* or *source* of his title and the *only* source of it; I think he was properly looked upon only as a *subsequent* purchaser whose conveyance was *not first* recorded.

And·still further upon the same subject, I desire to call attention to the language of the statute, where it speaks of the first or prior conveyance. It is that " every conveyance of real estate within this state, which shall not be recorded as provided by law, shall be void as against any subsequent purchaser," etc. I notice of this language that it wholly omits to mention or prescribe in connection with the first or prior conveyance, which is unrecorded at the time a subsequent one is or may be given to a purchaser in good faith and for a valuable consideration, that *such first conveyance* shall also have been made *in good faith and for a valuable consideration paid or received.* Good faith and the payment of value are not named as qualifying facts or elements necessary to the validity or effectual operation of the prior conveyance. The statute does not read : " Every conveyance in good faith and for a valuable consideration of real estate within this state hereafter made, which shall not be recorded," etc. The first deed may be executed and received,

therefore, *mala fide* and without the payment of any considera-- tion of value, and yet if the grantee therein causes the same to be recorded *before* the deed to the subsequent purchaser in good faith for value is recorded, the statute does not save or protect the rights of the latter or give him any advantage by or through the subsequent recording of his own deed. The subsequent purchaser in such case can gain nothing by such subsequent recording of his own deed. The subsequent purchaser in such case can gain nothing by such subsequent recording, but must resort to his remedy by action to set aside the prior conveyance on account of the fraud, if it be a fraud upon him or such as to give him that right. The *mala fides* of Nathaniel Green Wilcox, therefore, as the grantee in the first deed first recorded, in no manner impaired or destroyed the validity or superiority of his title under the registry act, so far as the rights of a subsequent purchaser in good faith for value from him were concerned.

And again, I am further induced to observe that it seems to me much confusion and uncertainty have been brought into the treatment and discussions of this subject, by the frequent and almost continuous use and recurrence in the opinions of courts and the works of authors, of the words "constructive notice." Those words are not anywhere found in the registry laws, and, although their meaning is in general well understood, yet they are often so employed as to confuse and perplex the reader, rather than to convey an intelligent idea of the precise view which the court takes of the statute or of the principle or reason which lies at the foundation of its decision. To say, for example, under a statute like our own, where A., the owner, conveys land to B., and afterwards conveys the same land to C., who records his deed before that to B. is recorded, that the subsequent record of B's deed is constructive notice to a person afterwards purchasing from C., affords no explanation at all of the construction given by the court to the statute, or of the ground or reason upon which the record of B's deed is held so

to operate. To say in the different case, if B. records his deed before that to C. is recorded, that then the record of C's deed is not constructive notice to a person subsequently purchasing from B., is in like manner to leave the point of statutory construction and true principle of decision, equally untouched and unexplained.

This last point of construction of the statute, and the principles. upon which decisions of the kind have been or may be made and maintained, I have already attempted to clear up and explain in connection with the case of *Ely v. Wilcox.* It is the construction and principle upon which that decision turned. In this respect, that is, in respect to the deed first executed, and first recorded, the registry law does not break in upon or conflict, but is in entire harmony with the rule of the common law, that he who is first in time is first in right; that an owner, who has once conveyed his estate or title, cannot afterwards convey the same estate or title by the execution of a subsequent deed to another. Independently of the recording act, the prior deed, though unrecorded, has full operation and effect, that is to say, defeats a subsequent purchase and deed, however truly made, in good faith and without notice. But in the case first put, or with respect to a first conveyance, not recorded until after a second conveyance of the same land, by the same grantor, to a third party has been, the statute, if certain other conditions specified in it have also been complied with, has introduced a new rule, different from that which would have prevailed at the common law. If the other conditions specified have also been fulfilled, then, by operation of the statute, the second, or subsequent conveyance, or the title acquired under it, becomes prior and paramount. to the first conveyance, and the title conveyed by it. In such case the statute declares the first conveyance *void*, as against the second or subsequent one.

Now, the reason why the purchaser from C., in the case first above supposed, who buys *after* the recording of the prior deed to B. from A., also the grantor of C., is bound to take notice

of B.'s deed, or of the fact that the true title is or may be in B., is that such purchaser in looking upon the statute sees that B.'s prior and paramount title at common law, is not to be divested or his deed avoided, except upon the happening of three distinct events or contingencies, the absence of either of which will save the title of B., or prove fatal to that claimed by C., or which may be acquired by a purchaser from him. Those events or contingencies are, first, *good faith* in C., or the purchase by him, without notice, of the previous conveyance to B.; second, *the payment of a valuable consideration* by C.; and third, the *first recording* of C.'s deed.    The purchaser from C., looking upon the record, sees, first, the *prior* conveyance from A. to B., and, second, the *first recording* of C.'s deed.    Of these two facts the record informs him, but of the other two facts requisite under the statute to constitute valid title in C. as against the prior purchaser B., the record gives him no information. For knowledge of the other two facts, namely, the *good faith* of C. and *valuable consideration* paid by him, the purchaser from, or any one claiming title under C. as against B. or his grantees, must inquire elsewhere than by the record, and is bound, at the peril of his title or of any right which can be granted by or claimed under C., to ascertain the existence of those facts.

This is what is meant, when reviewed in the light of principle and of the law, both common and statutory, by the expression "constructive notice," as applied to the *after* record of a *prior* deed in the same chain of title or where different parties claim adversely under conveyance, or title from the same original grantor or owner.    And it is manifest from the same examination, that the effect or operation of the statute as a bar of the title, or avoidance of the conveyance of the first purchaser, is not complete until all the conditions of the statute have been performed or fulfilled.    In other words, it is manifest that the right of the first purchaser to preserve his title by the recording of his deed, is not limited to a recording thereof *before the first subsequent purchaser*, whose deed was *first* recorded, has made a

conveyance of the premises, and which last conveyance has also been recorded.   The operation of the statute, so far as it goes in favor of the first purchaser, is not limited and does not stop or cease with the first, second, third, or any specified number of *first* recorded subsequent conveyances to subsequent purchasers, or from one such purchaser to another, and consequently the right of the first purchaser to save himself by the recording of his deed continues, or may continue after any number of subsequent conveyances have been recorded; for, if the facts exist, that such subsequent purchasers, one and all, bought either not in good faith or not for a valuable consideration, then his prior deed will hold, and the title conveyed by it be preferred.   If, for example, in the case supposed, C. took his deed with knowledge of the prior conveyance to B., and had then conveyed to D., who had like knowledge, and D. should convey to E., and so on, conveyances should be executed to the end of the alphabet, each subsequent grantee having knowledge of B.'s prior right, and all of their conveyances being recorded, yet then, if B. should record his deed before the last grantee, with knowledge and Z. should make conveyance, the purchaser 'from Z. would be bound to take notice of B.'s rights, and of the relations existing between him and all the subsequent purchasers from C. to Z., inclusive.   And in the same case, if Z. should sell to a purchaser in good faith for value from him, yet if B. should get his conveyance recorded *before* that of such purchaser, his title would be preferred, because of such *first record.*   And it is manifest that the same result would follow, if in the case supposed, none of the subsequent grantees, from C. to Z., inclusive, paid any valuable consideration for the land, or, if in the case of each successive grantee, his title was defective and invalid as against B., either by reason of his knowledge of B.'s title, or because he was a mere volunteer, paying no consideration whatever for the conveyance.

Now, in view of the foregoing exposition of the statute and

of the primary principles governing the subject, it would seem, to me to have been better if the courts, instead of the phraseology, "constructive notice," as frequently used in connection with the statute and with instruments recorded under it, had merely laid down the rule that every purchaser of real estate is conclusively presumed to know and to examine every conveyance properly of record, by which the title he is acquiring, or proposing to acquire, is, or may be, in law, affected, impaired or defeated.   Such being the presumption with respect to the purchaser, and his obligation to search the records, and it being ascertained what conveyances are properly recorded, I suppose it may be taken as true that he sees and knows the contents of all such conveyances; and then, the inquiry arises how in contemplation of law they affect or may affect the title for which he is treating.   If, in contemplation of law, they can have no effect upon such title, the purchaser disregards them, notwithstanding they appear of record.   If, on the contrary, by the principles and rules of law, common or statute, or both, they have or may have the effect to impair or defeat such title, or to show that the vendor is not or may not be possessed of the estate, absolute or qualified, which he proposes to sell, then the purchaser stays his hand, and waits until the defect is cured or the truth ascertained; or, if he chooses, he may proceed at his own peril. In either case, whether he proceeds or refuses to, the purchaser takes notice, or is conclusively presumed to take notice of every recorded conveyance, which, by operation of law, does or may impair or defeat the title of the vendor.

And it seems to me also, that every consideration of the subject, and construction of the statute, founded upon the convenience or inconvenience, real or supposed, of searching the records in the manner in which they are kept or indexed, is wholly impertinent, and therefore deceptive and liable to lead to error.

And here it seems proper to notice some of the very absurd and injurious consequences which must ensue from the oppo-

site construction, or that heretofore put upon the statute by this court, in the present case, holding that it is limited in its operation to subsequent purchasers *from the same grantor*. Thus interpreted, the statute would be, or be made to read, as follows: "Every conveyance of real estate within this state, hereafter made, which shall not be recorded as provided by law, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration of the same real estate, or any portion thereof, *from the same grantor*, whose conveyance shall be first duly recorded." The words in italics represent the words interpolated according to the former decisions. Now let us see how this would work in particular cases. Let us take the case above supposed. A., the owner, conveys to B., a purchaser, for value, who does not record his deed. A. then conveys the same land to C., who does record. C. is not a purchaser in good faith, nor for a valuable consideration. He knows of B's deed at the time he takes his subsequent deed from A., and he pays nothing for the land. He takes such deed for the purpose of defrauding B. of his title. As the case now stands, with C's deed recorded and B's not, no one would say, I apprehend, that C. has the title, or that B. has not. Indeed, it is perfectly certain, under the statute, that as between B. and C., the title is in B. B. acquired it by his conveyance first in time from A., and nothing has yet happened which, by the statute, deprives him of it.

Let us proceed one step further, and suppose that C., B's deed being still unrecorded, sells and conveys the land to D., a purchaser for value from him, having no notice whatever of B's outstanding unrecorded deed, and that D. records his deed in advance of any record of the deed to B., or that the deed of the latter remains unrecorded after that of D. has been. How now stands the title as between D. and B.? Manifestly, I think, that D. has it, and that the deed of B. has been avoided by operation of the statute. But, upon the other theory or construction, that the statute only applies to subsequent pur-

chasers in good faith, and for a valuable consideration *from the same grantor*, it is manifest, the title would still be in B. and not in D., for the plain reason, that D. purchased from a *different* and *not* from the *same* grantor, and so that requirement of the statute would not be fulfilled. This conclusion seems very obvious, and exemplifies in a striking manner what, I cannot otherwise designate, than as the extreme absurdity and injustice of the construction heretofore given to the statute. It cannot be, that the legislature ever intended such result. Nor would the injurious consequences, as in the case supposed, stop with D. It would follow, from the same construction, that D. could convey no title to a *bona fide* purchaser from him, which purchaser should first record his conveyance, nor that purchaser to another like purchaser, and thus on, regardless of the number of successive conveyances which might in like manner be made and recorded. With B.'s deed recorded after the recording of D.'s, or of that of any subsequent purchaser, or never recorded at all, no person could, at any time, acquire title as against him under the fraudulent conveyance executed to C. No valid title could ever emanate or be derived from C.'s fraudulent deed, for the reason that no person, purchasing from or under him, could be deemed a subsequent purchaser within the meaning of the statute. Such purchasers not being within the intent, and so not within the protection of the statute, their title would be postponed both by the statute and by the common law, to the prior and paramount title of B. With his deed never entered at all of record, the title would remain in B., and nothing could get it out or disturb it, so far as the registry law is concerned, until some *bona fide* purchaser for value from A., B.'s immediate grantor, should appear and cause his deed to be first duly recorded. No such construction of the statute can ever receive my assent. It would be to abrogate the registry law entirely in such a case, and say that B. might never record his conveyance, and yet should hold the land.

In addition to the authorities cited in my former opinion, the following decisions in New York, referred to in the arguments of counsel for the plaintiff, will also be found in point. *Jackson v. Town*, 4 Cow., 405; *Ledyard v. Butler*, 9 Paige, 132; *Purdy v. Huntington*, 46 Barb., 398; *Jackson v. Campbell*, 19 John., 283; *Hawley v. Bennett*, 5 Paige, 111; *Vanderkamp v. Shelton*, 11 Paige, 28–39.

And there is also an early New Jersey case, heretofore unnoticed, which bears very strongly upon the question. *Den v. Richman*, 1 Green, (Law) 43, 52, 53. A statute of that state declares that "a deed not recorded within six months, although afterwards recorded (as it may be), is not valid and operative against a subsequent deed to a *bona fide* purchaser, without notice, if such subsequent purchaser has lodged his deed to be recorded, before the prior deed is lodged with the clerk for the same purpose." Speaking of the subsequent purchaser in that case, who was within the terms of the act, except that he had not lodged his deed to be recorded before the prior deed was lodged with the clerk for the same purpose, Chief Justice EWING says: "But he is not protected who can merely say, 'I am a purchaser, for a valuable consideration, in good faith and without notice.' He must be able further to say to the former purchaser, 'your deed has not been recorded within six months, and mine has been first lodged with the clerk to be recorded.' 'The purchaser here is unable to say so. His deed was not 'previously lodged with the clerk.' Consequently his deed is not one of the description against which the antecedent deed is forbidden to operate." The applicability of the decision will readily be seen.

The question as to the effect of the records of the two powers of attorney, the one from Charles Pierce to *John D. Pierce*, dated March 10th, 1852, and recorded April 23d, 1855, and the other from *William H. Pierce* to *John D. Pierce*, dated March 9th, 1852, and recorded March 28th, 1859, is determined, we think, by the provisions of section 105, c. 137, R. S., 1858, and sec-

tion 1, c. 272, Laws 1864. 2 Tay. Sts., 1619, § 159. Like provision was made by section 95, c. 98, R. S., 1849. The powers of attorney were executed and purported to have been acknowledged, one before a justice of the peace, and the other before a county clerk, in the state of Illinois, but wanted the certificate of authentication of official character, genuineness of signatures, authority of the officers purporting to take the acknowledgments, and formality of acknowledgment, as required by law. R. S., 1849, c. 59, § 10. The statutes above referred to, provide that "all deeds, mortgages, or other instruments in writing, relating to real estate situate within this state, which shall have been recorded in the office of any register of deeds before this act shall take effect, purporting to have been acknowledged or proved without this state, and having upon them substantially the ordinary form of a certificate of acknowledgment or proof, purporting to have been signed by some officer in another state or country, shall be deemed *prima facie* in all legal proceedings, to have been acknowledged or proved (as the case may be) before the proper officer, and in conformity with the laws of such state or country where it purports to have been acknowledged or proved; and the records of all such deeds, mortgages and instruments, certificate of acknowledgment and proof, may be read in evidence in like manner, and with the same effect, as the originals, notwithstanding the omission of a certificate of authentication, as required by sections ten and eleven of chapter eighty-six of the revised statutes."

This statute is a remedial one, and as such should be liberally construed to attain the objects intended. One of those objects manifestly was, so far as possible, by legislation, to remove or take away from the titles of persons holding lands under conveyances and instruments of the kind specified, the defect or cloud thus resting upon them. Such was, no doubt, the principal object intended, when it was declared that instruments purporting to have been so acknowledged, "shall be

deemed, *prima facie*, in all legal proceedings, to have been acknowledged or proved before the proper officer, and in conformity with the laws of such state or country," etc. To give this *prima facie* effect to the acknowledgment in all legal proceedings, is to make it *prima facie* valid for the purpose of the record, and consequently the record *prima facie* good for all purposes which can be served by any record of a deed, mortgage or other instrument in writing, relating to real estate. The recording of a deed or other conveyance is a legal proceeding, that is, a proceeding authorized and provided for by law. To construe the statute, therefore, as not requiring purchasers to take notice of the record of instruments of the kind described in it, or as not binding purchasers by such record, would be to deprive the statute of a large share of the utility and force intended to be given to it by the legislature. Thus construed, the statute would afford but a scintilla of relief against the evil seen and aimed at by the legislature, and for which we must presume the legislature intended to provide a full and adequate remedy.

The claim of title set up and made by the defendant *Parks*, through the tax deed to Ballard and thence by quit-claim to himself, is unavailing. *Parks* acquired title to the lands in 1860. The deed was issued for the unpaid taxes of 1861, assessed after *Parks*' became the owner. As the owner in fee of the lands (subject to the mortgages, or which became subject by his omission to record) and party presumptively in possesssion and liable by law for the payment of the taxes at the time of assessment, *Parks* could gain no advantage as against any one by suffering the land to go to sale, and then taking a quit-claim from the grantee in the tax deed. This was but a circuitous and dilatory way of paying the taxes, and after all, nothing but a payment which it was his legal duty to have made in the first place. 20 Wis., 356; 22 Wis., 175; 22 Maine, 331. It is impossible to conceive of a speculation in tax titles upon one's own lands, or how the owner who is under obliga-

tion to the public and bound by law to pay the taxes, can change his status or affect his title by such roundabout proceedings. He must in the end come right back to the point whence he started. It is clearly not the policy of the law to encourage delays of this kind in the payment of taxes.

The same observations are applicable to the other tax deed.

The answer of the statute of limitations, contained in the second defense to the supposed cause of action, to have the releases executed by Blanchard, and the record of them set aside and vacated, might be very well, if any such relief were in fact sought or were necessary to maintain the rights of the plaintiff. No such relief was necessary or was demanded, and no such judgment was taken. It is a matter, therefore, entirely foreign to the present controversy, and no further notice of it is required.

There are no other questions which, in our judgment, demand serious or particular consideration, and we must accordingly hold that the judgment of the court below was correct, and should be affirmed.

*By the Court.*— Judgment affirmed.