1835.

Hawley
v.
Bennett.

---

### HAWLEY and others *vs.* BENNETT.

Under the recording act of January, 1794, relative to conveyances in the military tract, and the act of 1801, concerning mortgages, the bona fide purchaser of a military lot is protected against a claim under a prior unre= gistered mortgage, although such mortgage is afterwards registered before the recording of the deed.

The admissions of a person in possession of land, made under a mistake of law, and which are wholly inconsistent with his written evidence of title, cannot be received for the purpose of destroying his title to the land.

Where a statutory foreclosure of a mortgage took place previous to the pas= sage of the act authorizing the making of affidavits to perpetuate the proof of the regularity of the proceedings, and where the attorney who made such foreclosure was dead, the entry of the attorney, in his register, of a sale pursuant to the notice, and a recital of the facts in the deed, were held sufficient evidence, prima facie, to establish the fact of such sale.

The form of the security to be given upon an appeal from a vice chancellor *being regulated by a rule of the court, and not by statute,* the approval of the appeal bond by the register, instead of the clerk of the vice chancellor with whom the appeal is entered, is a mere irregularity, which will be con= sidered as waived, if the adverse party does not apply to the chancellor to dismiss the appeal within a reasonable time after notice of such irreg= ularity.

March, 3.     THIS was an appeal from a decree of the vice chancellor of the seventh circuit, dismissing the complainant's bill with costs. The original bill was filed by William James, against the de-

1835.

Hawley
v.
Bennett.

ēndant, Bennett, in 1831, to restrain the commission of waste ⸱pon 100 acres of land in lot No. 32, in Marcellus, of which ..00 acres James claimed to be the owner in fee. On the 5th ⸱f May, 1803, J. K. Beekman conveyed the whole of lot No. .'2, in Marcellus, together with two other lots in the military ːact, to Henry Corl, junior, for the consideration of $9000. On the 6th May, in the same year, Corl and wife mortgaged to Beekman lot No. 32, in Marcellus, to secure the payment of $2000 in five years, with interest annually ; but the mortgage was not registered in the county where the mortgaged premises were situated, until the 9th of September, 1805. In October, 1803, Joseph Bennett, the defendant's father, purchased the 100 acres in question in this cause, of Corl, and took from him a bond for a deed, and went into possession under the same. On the first of September, 1805, and before the registry of Beekman's mortgage, Corl conveyed the premises to Bennett in fee, in conformity with the condition of the bond ; but the deed was not recorded until after the commencement of this suit. In August, 1807, James took an assignment of the mortgage from Beekman, and proceeded to foreclose the same by advertisement and sale, under the statute. The mortgaged premises were struck off to J. Flack, for $500, and were conveyed to him by James as the assignee of the mortgage, and Flack immediately reconveyed to James ; but neither of those deeds were recorded until after the commencement of this suit. Both Bennett and James supposed the latter had acquired the legal title to the premises under the mortgage ; and Bennett remained in possession by permission of James, admitting his title, until his death, in 1831, a few days before the commencement of this suit. And at his death the present defendant went into possession, and continued such possession, claiming the land as the heir at law of his father. The vice chancellor decided that Joseph Bennett having purchased and paid for the premises, and obtained a conveyance therefor from Corl, without notice of the mortgage, and before the registry thereof, he was entitled to hold the premises, although such mortgage was afterwards registered before the recording of the deed. He also decided

1835.

Hawley
v.
Bennett.

that the admissions of Joseph Bennett, as to the validity of James' title to the land, having been made under a mistake as to his own rights under the deed, could not operate to divest the legal title which was then vested in himself; and that the complainants, as the trustees under the will of James, had therefore failed in establishing their right to the premises in controversy. At the hearing of the appeal, a motion was made, upon a notice to the opposite party, to dismiss the appeal, upon the ground that the appeal bond was approved by the register, instead of being approved by the clerk with whom the appeal was entered, as required by the 116th rule of this court.

*James King*, for the complainants, insisted,

1. That the complainants had deduced a perfect title from John K. Beekman.

2. That the proofs showed there had been no adverse possession, but a tenancy merely, by the defendant's ancestor, under William James, the complainant.

3. That the act concerning mortgages, passed April 6th, 1801, did not repeal or affect the act of 8th January, 1794, relative to the military tract.

4. That under the act of 8th January, 1794, where a deed was given subsequent to a mortgage, if the mortgage was registered before the deed was recorded, the mortgage must have preference.

5. That to enable James, the assignee of Beekman, to obtain a good title under a sale of the mortgaged premises, it was not necessary to record the power of sale.

6. That the 10th section of the act of 1813, (1 *R. L.* 375,) was only declaratory of the common law as it existed previous to the passage of that section ; and that a deed was not necessary, under the act of 1801, where the mortgagee became himself the purchaser. The counsel cited *Jackson* v. *Campbell,* (19 *Johns. Rep.* 281 ;) *Moseley* v. *Demattos & Slader,* (1 *Burr.* 474 ;) *Williams* v. *Pritchard,* (4 *Durn. & East,* 2 ;) *Bergen* v. *Bennett,* (1 *Cain. Cas. in Err.* 17 ;) *Wilson* v. *Troup,* (2 *Cowen,* 195 ;) and *Jackson* v. *Colden,* (4 *Id.* 276.)

*L. H. Sandford & J. Rhoades,* for the defendant, contended,

1. That the complainants had not shown a prima facie title in their testator, W. James.

2. That Bennett being a bona fide purchaser, for a valuable consideration and without notice of the then unregistered mortgage from Corl to Beekman, he acquired a valid title to the premises, under the bond for a deed given to him in 1803, and by the deed executed on the first of September, 1805, in pursuance of the agreement contained in the bond; entirely free and discharged from the lien of the unregistered mortgage of Beekman. To which point they cited *Jackson* v. *Campbell,* (19 *John. Rep.* 281,) *Jackson* v. *M'Chesney,* (7 *Cowen,* 361,) and *Berry* v. *The Mutual Ins. Co.,* (2 *John. Ch. R.* 603.)

3. That the subsequent registry of the mortgage, prior to the recording of Bennett's deed, did not restore or alter the lien of the mortgage as against Bennett. (*Jackson* v. *Anderson,* 4 *Wend. Rep.* 474.)

4. That the possession of Bennett under his deed was notice of his rights to all the world; and therefore neither J. Flack nor W. James was a purchaser without notice. (*Tuttle* v. *Jackson,* 6 *Wend. Rep.* 213. *Grimstone* v. *Carter,* 3 *Paige's Rep.* 421.)

5. That J. Bennett's possession, at the time of the alleged mortgage sale, was adverse to the mortgagee; and the deeds executed at that date were absolutely void. (*Jackson* v. *Newton,* 18 *John. Rep.* 355.)

6. That an indefeasible and perfect legal estate was vested in Bennett by his deed from Corl, which could not be divested or impaired by his parol declarations as to his title; and that those declarations could not benefit the complainants, they being inadmissible to impeach a good title. (*Jackson* v. *Anderson,* 4 *Wend. Rep.* 474, 482. *Jackson* v. *Carey,* 16 *John. Rep.* 302. *Jackson* v. *Vosburgh,* 7 *Id.* 186. *Jackson* v. *Miller,* 6 *Cowen,* 751.)

7. That the injunction was properly dissolved, as the complainants had neither shown title nor the commission of waste, and the defendant had established a perfect title. (*Storm* v. *Mann,* 4 *John. Chan. Rep.* 21. *Jackson* v. *Brownson,* 7 *John. Rep.* 237.)

1835.

Hawley
v.
Bennett.

8. That the decree was right in dismissing the bill with costs. (*Camp* v. *The Receivers of the Niagara Bank*, 2 *Paige's Rep.* 283.)

THE CHANCELLOR. The security to be given upon an appeal from a vice chancellor to the chancellor, is regulated by a rule of this court, and not by statute ; although the rule refers to the statutory provisions on the subject of appeals to the court for the correction of errors, to ascertain the nature of the security to be given, and the terms upon which the decree or order appealed from shall be suspended or affected by the appeal. This court therefore, upon such an appeal, may dispense with the strict letter of the rule, and may permit the bond to be approved by the proper officer, even where the respondent applies to dismiss the appeal immediately after the irregularity is discovered. (4 *Paige's Rep.* 459. 2 *Idem*, 391.) In this case, the approval of the bond by the register, instead of the clerk with whom the appeal was entered, was a mere matter of form ; and must be considered as waived by the respondent, by reason of his neglect to apply to dismiss the appeal for more than six months after he had notice that the bond was approved by the wrong officer. I shall therefore deny the motion to dismiss the appeal, and proceed to examine the case on its merits.

It was insisted, by the counsel for the respondents, on the hearing, that the evidence was not sufficient to establish the fact as to the regularity of the statute foreclosure. In deciding this question, it must be borne in mind that this foreclosure took place before the passage of the act of April, 1808, which made the affidavits of the printer, and of the persons who posted up the notice and made the sale, prima facie evidence of the publication and posting of the notice, and of the circumstances respecting the sale. As there was, at the time of the sale, no legal mode of perpetuating the evidence of these facts, and as the attorney who conducted the proceedings and his clerk who made the entries in his register are both dead, I am satisfied with the evidence adduced. And after the lapse of twenty-five years, I think the entry in the register of Mr. Henry, of the sale on the day mentioned in the

notice, and the recitals in the deed of the same date, are sufficient, prima facie, to establish the fact of the sale on that day, at public auction, and that the premises were struck off to Flack, as recited in the deed to him.

In the case of *Jackson, ex dem. Center*, v. *Campbell*, (19 *John. Rep.* 281,) the supreme court decided, in a case arising in one of the recording counties, that a bona fide purchaser from the mortgagor was protected against a claim under a previous unregistered mortgage; although the deed to such purchaser was not recorded until after the registry of such prior mortgage. I am not aware that the correctness of that decision has ever been questioned. But it is insisted, in behalf of the appellants in the present case, that the act of the 6th of April, 1801, concerning mortgages, (1 *R. L. of* 1801, *p.* 480,) when taken in connection with the act of January, 1794, for registering deeds and conveyances relating to the military bounty lands, (2 *R. L. of* 1801, *p.* 262,) must receive a different construction in relation to lands lying within the military tract.

The last clause of the first section of the act of 1801, concerning mortgages, and which was retained in the same words in the revision of 1813, contained no new principle. It was but a re-enactment of the previous law on that subject, which was embraced within the ninth section of the act of the 26th of February, 1788. (2 *Greenl. Laws*, 102.) And there is no material difference between the recording act of 1794, requiring deeds and conveyances for lands in the military tract to be recorded, and the act of April, 1798, which required deeds and conveyances for lands in the county of Ontario, and certain other counties, to be recorded in the like manner. This last act took effect on the first of February, 1799, and formed the basis of similar provisions in the revised acts of 1801 and 1813, as to the then recording counties; and of the general act of april, 1823, making all the counties of the state recording counties. The exception, of mortgages duly registered according to law, which is contained in the act of 1794, appears to have been introduced for greater caution—to exclude an erroneous conclusion that the legislature intended to require the recording of mortgages which had been duly re- gistered As to other mortgages, no special legislation was

necessary in reference to the military tract; the general act of 1788, which was then in force, rendering mortgages not registered void as against subsequent bona fide purchasers, wherever the mortgaged premises were situated. Although this exception is not contained in the act of 1798, requiring deeds in Ontario and other counties to be recorded, and in the subsequent recording acts, such an exception is necessarily implied. The principle of requiring mortgages to be registered, and of giving a preference to the mortgagee whose mortgage should be first registered, was adopted as early as 1753, in the act for preventing frauds by mortgages. (1 *Van Schaack's Laws of N. Y.* 324.) From the preamble to that act, it appears to have been the intention of the colonial legislature to protect subsequent bona fide purchasers against the lien of unregistered mortgages, as well as to settle questions of priority as between different mortgagees of the same premises. The act, however, does not appear to have contained the necessary clause to carry that intention into effect; as it afterwards became necessary to pass a law, declaring in express terms that an unregistered mortgage should not defeat, prejudice, or affect the title or interest of any bona fide purchaser of the mortgaged premises. This provision, as I have before stated, was incorporated into the revised act of February, 1788; and was continued in the several subsequent revisions, until a different principle was adopted in the revised statutes now in force. In giving a construction to this provision, in connection with the recording act of 1794, and the acts which were subsequently passed as to the recording of deeds and conveyances in various ccunties of the state usually called recording counties, it must be recollected that when this principle was adopted, in 1774, and at the revision in 1788, there was no county in the state in which it was necessary to record a deed, or any other absolute conveyance, in order to protect the title of the purchaser against a subsequent grantee or mortgagee of the same premises. When the legislature, therefore, passed the recording acts of 1794 and 1798, they did not deem it necessary to change the law then in force, which declared an unregistered mortgage void as against a subsequent bona fide grantee of the same premises; but only to declare the effect

of an unrecorded deed, or other absolute conveyance, as a-gainst a subsequent grantee or mortgagee. And I can see no reason for giving a different construction to the act of 1794, in this respect, from that which was given by the supreme court to the recording act of 1798, as incorporated in the re-vised acts of 1801 and 1813. The judgment of the supreme court in *Jackson* v. *Campbell* must therefore be considered as decisive of this case. It may also be proper to notice the fact, that it appears, from a note of the revisors to the first section of the chapter relative to the proof and recording of convey-ances of real estate, that this difference between the effect of a prior unrecorded deed and a prior unregistered mortgage, upon the rights of subsequent purchasers and mortgagees, un-der the several acts then in force, was recognized as existing. And the revisors thereupon proposed to change the law for the future, so as to give a preference in all cases to the deed or mortgage first recorded. This recommendation of the re-visors was adopted by the legislature ; so that hereafter the principles of the recording act will be the same, whether the unrecorded conveyance or instrument is an absolute deed, or is only intended to be a security by way of mortgage. (*Rev. Rep. ch. 3, pt. 2, p. 5. 1 R. S.* 756, § 1, 762, § 38.)

The vice chancellor, therefore, arrived at the correct con-clusion, that the legal title to the premises in question, which was vested in the defendant's father by the deed of the first of September, 1805, was not divested or in any way affected by the subsequent registry of the mortgage to Beekman. And neither the conveyance to Flack, nor the reconveyance of the same premises to James, on the statute foreclosure, while Ben-nett was in possession of the premises as absolute owner un-der his deed, could constitute either Flack or James a subse-quent bona fide purchaser of the premises ; so as to overreach the previous deed to Bennett, even if those conveyances had been recorded together with the mortgage, prior to the com-mencement of this suit. The decision of the vice chancellor, that the admissions of Bennett while he remained in posses-sion under his deed, and which were wholly inconsistent with the written evidences of his title, could not be received in evi-dence to destroy such legal title, was also correct ; as those

admissions were unquestionably made under a mistake of the law as applicable to the case.

The decree of the vice chancellor must be affirmed, with costs to be paid by the complainants, out of the estate of W. James in their hands as executors and trustees. And in accordance with the understanding of the counsel for the respective parties on the argument, the costs and expenses due to the solicitor of the complainants, upon the proceedings for a breach of the injunction, must be offset against the costs which the complainants are liable to pay. As it is now ascertained that the premises belonged to the defendant, as heir to Joseph Bennett his father, so much of the fine as was imposed upon him for the value of the wood and timber cut upon the premises in violation of the injunction, which was to be secured or paid to the register, must be remitted; or if already paid, it must be restored to the defendant, and he must be discharged from the custody of the sheriff.