MILO C. OSBORN, RESPONDENT, v. ASHER MERWIN, APPELLANT.

*Statute foreclosure — a bar though no affidavits are made — In default of affidavits, sale how proved — Parol agreement to sell, change of possession, etc. — effect of.*

A sale had under a foreclosure by advertisement, pursuant to the statute, bars the equity of redemption, although no affidavits are made.

In default of such affidavits, the sale may be proved, as against the mortgagee, by secondary evidence, which would include the entries relative to the sale in the register of the attorney who conducted the proceedings; an entry made in his book, in the due course of business, by the printer of the paper in which the notice was claimed to be published, charging the attorney with the expenses of such advertisement, as tending to show that the advertisement was made; and, also, evidence of a parol agreement by which the mortgagee, with the assent of the mortgagor, purchased the mortgaged premises for the amount of the mortgage, and the subsequent taking possession thereof by the mortgagee.[*]

In such case a verbal agreement between the mortgagor and the mortgagee for the sale of the property for the amount of the mortgage, possession being delivered and improvements being made, would be valid.

APPEAL from a judgment entered upon a verdict in favor of the plaintiff at the Washington Circuit.

This action was brought to recover the deficiency on a bond after a foreclosure of the mortgage by advertisement. The foreclosure took place in July, 1859, and the assignee of the mortgage was the purchaser. The obligor set up, as a defense, that before that time,

_____
[*] See 11 Hun, 545.

and in August, 1855, the same assignee foreclosed the mortgage by advertisement, bought the property for the whole amount of the mortgage debt, and went into possession.

The defendant testified that, in 1855, a notice was served on him by the plaintiff, by mail, of the foreclosure of the mortgage in question for the 13th of August, 1855. He testified that he had lost the notice, but he gave its contents; that he attended the sale on that day. Another witness testified that he saw the notice stuck up on his office door, and saw the notice in the Eagle, a newspaper. The printer of the newspaper testified that he published a notice of a mortgage sale, in which the plaintiff was assignee, in 1855. He testified that he could find no file of his paper. The charge for the services was in June.

The defendant offered in evidence the register of a deceased attorney, who it was claimed conducted the foreclosure of 1855, but this was excluded. He offered to show, by parol, the contents of the notice of sale published in the Eagle, and of the notice stuck upon the office door, but this was excluded.

The defendant then offered to show a sale of the premises on the 13th of August, 1855, for more than enough to satisfy the mortgage, but this was excluded. The defendant then proved that the plaintiff took possession shortly after that time.

*James B. Olney*, for the appellant.

*J. J. Werner*, for the respondent.

LEARNED, P. J.:

In *Tuthill* v. *Tracy* (31 N. Y., 157), it was held that a sale pursuant to the statute bars the equity of redemption without any affidavits being made. This case is cited in the recent case of *Mowry* v. *Sanborn* (MS., Ct. App.), without criticism, and must, therefore, be the law.

If there were no affidavits, then, of course, there was no reason for the exclusion of other proof of the facts, if such proof was otherwise proper.

The service of the notice of sale on the defendant was proved without dispute. As to the publication in the Eagle, Mr. Ives tes-

tified that he knew of a foreclosure commenced by one Watson Osborn for the plaintiff against the defendant's property; that it was commenced in 1855, he thinks, in May, and that he saw the notices. The printer testifies that he cannot find any files; that he published a notice of mortgage sale, in which the plaintiff was the assignee; that the notice was brought to him by Mr. D. K. Olney. The register of Mr. Olney, who is deceased, is offered in evidence, and excluded. It contains the title of the case, a statement that he is counsel, and W. Osborn attorney, and, among other things, these entries : " Prepared advertisement and put in the Eagle, May 16, 1855 ;" " Posted notice of sale on court-house door — done by me."

In the case of *Hawley* v. *Bennett* (5 Paige, 104), which also is cited approvingly in *Mowry* v. *Sanborn* (*ut supra*), it was held that entries in an attorney's register of a sale on the day mentioned in the notice were admissible in evidence. It is true that this was before the act of 1808, which made the affidavits *prima facie* evidence. But we have already seen, in *Tuthill* v. *Tracy*, that it is not necessary, in order to cut off the equity of redemption, to make any affidavits. In the present case, if any affidavits were made, the plaintiff was notified to produce them; and, failing to do so, secondary evidence was admissible. If no affidavits were ever made, then it was necessary and proper to introduce ordinary common-law proof. And, as such, these entries were admissible.

So the printer testified that, aside from his book, which was produced in court, he could not remember that he published the notice thirteen weeks. The defendant offered in evidence an entry on the book, and the court excluded this and also the evidence in regard to it. It does not distinctly appear what this entry was. It seems to have been a charge against Mr. Olney for printing this advertisement. Mr. Olney's register would have shown him to be the plaintiff's agent in this business of foreclosure. So that this entry by the printer would seem to have been a charge against the plaintiff's agent for doing certain work in his behalf. And the question is whether this was admissible in evidence that the work had been in fact done, that is, that the printer had actually published the advertisement for which he made a charge.

It seems to me that this comes within the doctrine of *Guy* v.

*Mead* (22 N. Y., 462). From what appears, the memorandum must have contained, or implied, a statement that this advertising had been done. The witness testified that it was made in the ordinary course of business, and would not have been made if it had not been true. And certainly (aside from the former strict rule of evidence), such a charge, made at the time, is more convincing than the memory of a witness as to a matter nearly twenty years old.

There is another consideration. A sale under such proceedings as these is made by virtue of the power given by the mortgagor to the mortgagee. The mortgagee is by statute permitted to be a purchaser, but he sells by virtue of the mortgagor's authority, just as if the mortgagor sold the property himself. The statute regulations as to notice, etc., are for the benefit of the mortgagor. Now, the defendant offered to prove that, at the time fixed by the notice served on him, viz., August 13, 1855, the plaintiff did sell the property to himself for more than enough to satisfy the mortgage, and that the defendant was present; he proved that the plaintiff told the defendant he had bought the premises; that he took possession soon thereafter and exercised acts of ownership; and that, at the plaintiff's request, the defendant in a few months gave up possession and went away. He offered to show that, in March, 1859, the plaintiff made a contract to sell a part of the property by warranty deed, which contract was, by its terms, to be completed by April 1, 1859, two months before the second foreclosure was commenced; and that the plaintiff received the full amount thereof April 11, 1859.

This, then, was evidence that the defendant surrendered to the plaintiff possession of the premises, upon a sale thereof to the plaintiff, at a price equal to the amount of the mortgage. If we look upon this merely as a verbal agreement between the plaintiff and the defendant to sell the property for the amount of the mortgage, they could make such an agreement; and they could carry it out by respectively giving and taking possession. They did so, and the plaintiff, after taking possession, went on and made improvements by building. This would have made the verbal agreement binding. By the sale, which the defendant offered to prove, the plaintiff agreed to give for the land the amount of the mortgage; and the defendant accepted this by giving up possession under that

offer. If the plaintiff, by neglect, has failed to preserve that evidence of the sale which is authorized by the statute, viz., the affidavits, he should not be allowed to deprive the defendant of the benefit of the plaintiff's own bid for the property. The defendant makes no objection to the regularity of the proceedings; he accepted them as valid and yielded possession. No one else can complain, if he does not. The plaintiff ever after that time continued possession as owner, claiming the premises in fee. He can, even now, make out the proper affidavits. (*Tuthill* v. *Tracy*, *ut supra*.)

The judgment and order should be reversed and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., and BOARDMAN, J.; BOOKES, J., taking no part.

Order reversed, with costs.