HENRIETTA CHURCH, as Executrix, etc., of WALTER S. CHURCH, Deceased, Respondent, *v.* LYMAN HEMPSTED and EMMA J. HEMPSTED, Appellants, Impleaded with MATILDA DAVIS.

*Entries in an attorney's register as proof of the issue of an execution — a continuance in possession, after a sale under execution against the occupant, is not adverse — complaint in ejectment for non-payment of rent — declaration as to title — release of a part of a lot, subject to a perpetual lease, from its proportion of the rents.*

The issuing of an execution may be proved by entries in the handwriting of the attorneys recovering the judgment, on which it is claimed to have been issued, contained in their register, where the loss of the execution is established and the attorneys are both dead.

The fact that a tenant under a lease in fee remains in possession of the premises, after his interest therein has been sold under judgments recovered by the owner of the landlord's interest in actions for rent in arrear upon the premises, does not initiate an adverse possession.

A complaint in an action of ejectment containing a general allegation of the plaintiff's ownership and of her immediate right to possession, is ordinarily sufficient to entitle the plaintiff to show that the defendant is in default in the payment of rent reserved under a lease in fee of the premises, and that the plaintiff, as the owner of the landlord's interest, is, because of such default, entitled to the possession of the premises.

Declarations of the vendor in a contract for the sale of lands, showing that the vendee was then out of possession, and that the vendor declined to put him in possession and said he was unable to do so, do not prevent a subsequent judgment, obtained by the devisee and executrix of the vendor, foreclosing the contract of sale, from operating to cut off any interest which the vendee or his heirs might have in the premises.

The owner of the landlord's interest in a lot, which had been leased in fee, released to one who held a deed of the tenant's interest in a half of the lot, subject to its proportionate share of the rents reserved upon the entire lot, such proportionate share of the rents.

*Held,* that the release did not operate to extinguish the rents chargeable against the other half of the lot.

APPEAL by the defendants, Lyman Hempsted and Emma J. Hempsted, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 14th day of July, 1897, upon the decision of the court rendered after a trial before the court, without a jury, at the Albany Trial Term.

*J. H. Clute,* for the appellants.

*Marcus T. Hun,* for the respondent.

MERWIN, J. :

This action was commenced in March, 1895, to recover the possession of seventy-six and three-quarter acres of land in the town of Berne, in the county of Albany, being the south half of lot No. 434.

It is alleged in the complaint that one Walter S. Church in his lifetime was the owner in fee and entitled to the immediate possession, and on or before the 30th of March, 1881, was in the actual possession of the premises; that on the 30th of March, 1881, the said Church entered into a written agreement with one Albert B. Davis whereby Church agreed to sell and Davis agreed to purchase the property according to the terms and conditions in the contract specified; that on the 8th of December, 1890, Church died leaving a will, thereafter duly proved, in and by which he devised to the plaintiff, Henrietta Church, all his interest in the property and appointed her executrix and that she duly qualified as such; that on the 6th of March, 1894, the said Henrietta individually and as executrix commenced an action in the Supreme Court against said Davis to foreclose the said contract, and that such proceedings were had therein that by a judgment entered April 9, 1894, it was adjudged that the premises be sold at public auction by and under the direction of a referee therein named and appointed; that in pursuance of said judgment the premises were sold on the 29th of May, 1894, to the plaintiff, and a deed to her executed and delivered by the referee, and that the sale was afterwards duly confirmed by the court. It was also alleged generally that the plaintiff is the owner in fee and entitled to the immediate possession of the property, and that the defendants wrongfully and unlawfully withhold the possession from the plaintiff.

In the answer of the defendants there is practically a general denial. It is also alleged that the defendant Emma J. Hempsted is the owner of the premises, and at the time of the commencement of the action was and still is in lawful possession and that the other defendant has no interest or possession except as the husband of Emma J. Hempsted. It is also alleged that on the 10th of August,

CHURCH *v.* HEMPSTED.

1867, James Kidd and Peter Cagger released and conveyed to one Silas Wright all their right, title and interest in the property, and that the title of Kidd and Cagger is the source of the title of the plaintiff.

By the decision and judgment appealed from it is decided and adjudged that the plaintiff is the owner in fee simple absolute of the property and entitled to the immediate possession.

Upon the trial the plaintiff put in evidence letters patent from the State to Killian Van Rensselaer, given in 1685 and covering the lands in question, and subsequent transfers by will or deed down to a deed from Stephen Van Rensselaer and wife to James Kidd and Peter Cagger dated May 2, 1864. It was conceded by the defendants that these instruments, introduced in support of plaintiff's title, properly convey that title through the parties therein named up to the conveyance to Kidd and Cagger. This latter conveyance purported to convey the premises in question and the rents reserved on the original leases thereof. The title of Kidd and Cagger to the premises was transferred to Walter S. Church through the operation of a judgment recovered by Church against them on May 6, 1876, and a deed executed in accordance therewith to Church July 12, 1878. By the will of Church, proved in 1891, his title devolved upon the plaintiff, Henrietta Church, and she was appointed executrix.

On March 8, 1808, a lease was executed between Stephen Van Rensselaer of the first part, and Henry Lewis and Robert Spencer of the second part, demising to the parties of the second part the whole of lot No. 434, subject to the payment of an annual rent. On April 23, 1814, Robert Spencer and wife gave to Jacob Washburn a deed, by which he bargained, sold, remised, released and quitclaimed to said Washburn "the one equal south half of lot number four hundred and thirty-four, the whole of said lot being leased to Henry Lewis and the said Robert Spencer by Stephen Van Rensselaer, Esqr., subject to certain rents, covenants, conditions, provisions and reservations contained in said lease, which said lease bears date the eighth day of March, one thousand eight hundred and eight, reference thereunto being had will more fully appear." On May 4, 1835, Jacob Washburn and wife gave to Joshua Davis a similar deed of the said south half, it being described as bounded on the

north by lands owned by Lawrence Witbeck, and reference being made to the lease from Van Rensselaer, above referred to. On January 17, 1844, two judgments were recovered against Joshua Davis for rents in arrear upon the lease, one in favor of Stephen Van Rensselaer and others, executors of Stephen Van Rensselaer, deceased, and the other in favor of Stephen Van Rensselaer. Upon executions upon these judgments the premises in question were sold by the sheriff to Stephen Van Rensselaer on April 12, 1847, and a certificate of sale given. The sheriff's deed under this sale was given to Andrew D. Lansing, assignee of the certificate, March 20, 1858, and the title acquired thereby was, through divers transfers, conveyed to Church on September 1, 1873.

It is claimed by the defendants that there is no sufficient evidence of the issuing of executions upon the judgments, and that error was committed in receiving in evidence the entries upon that subject in the register of the attorneys for the plaintiffs therein. The attorneys were both dead, and the entries were in their handwriting. No point was made as to the sufficiency of the proof of loss of the executions. The objection was that the entry in the register is no evidence of the fact of issuing. The evidence was, I think, properly received, within the adjudications on that subject, and the issuing of executions sufficiently proved. (*Leland* v. *Cameron*, 31 N. Y. 115; *Fisher* v. *Mayor*, 67 id. 73; *Mandeville* v. *Reynolds*, 68 id. 528; *Hawley* v. *Bennett*, 5 Paige, 104.)

It appears that on July 4, 1839, Lawrence Witbeck conveyed the north half of lot No. 434 to Silas Wright, subject to its proportion of the annual rents, and the covenants and conditions made and reserved in the original lease by Stephen Van Rensselaer of the whole lot. On April 10, 1867, Kidd and Cagger gave to Wright a release of this north half from the rent reserved in the lease from Van Rensselaer. It is claimed by the defendants that this release of the north half extinguished the entire rent in the whole lot, and in some way operated to relieve Joshua Davis and the defendants who claim under him. It is not apparent how the release affected in any way the south half. Wright, in 1839, took the deed of the north half, subject to its proportion of the rents, and this proportion was the only subject of the release. Besides, prior to the release, Joshua Davis had, by reason of the judgments, and sale on

executions and deed, ceased to be owner of any interest in the south half.

It appears that Joshua Davis continued in possession after the sale in 1847. The evidence upon the part of the plaintiff authorizes the finding that Joshua left the premises prior to 1881, and that in 1881 Albert B. Davis, his son, was in possession. On the 30th of March, 1881, Walter S. Church, then being the owner of the title, entered into a written contract with Albert B. Davis for the sale to him of the property, and a conveyance upon the performance of certain conditions therein specified. There was proof that Albert was thereafter in possession, claiming under this contract. This contract does not seem to have been performed on the part of Albert, and, on the 9th of April, 1894, the plaintiff, individually and as executrix of W. S. Church, deceased, in an action brought against Davis for the foreclosure of the contract, obtained a judgment directing a sale of the premises. This was accordingly done, and upon the sale the plaintiff purchased the premises and a deed was given to her, dated May 29, 1894. Albert B. Davis died in December, 1894. The defendant Emma J. Hempsted is his daughter. Joshua Davis died in 1887.

There seems to be no dispute about the ownership by plaintiff of the fee. The dispute is over the right to the possession.

The defendants claimed at the trial, and here claim, that Joshua Davis was in possession from 1835 to 1881 or 1882, and then delivered possession to his granddaughter, Mrs. Hempsted. It was shown that in 1881 Davis handed to her two deeds, being the deed from Spencer to Washburn and the deed from Washburn to Davis, hereinbefore referred to, and said to her, " there is the deeds of my place and I render you my possession and want you to keep it." The defendants claim that they are now in possession under those deeds.

The title or right which Joshua had under those deeds was, as above stated, cut off by the sale in 1847 and the subsequent conveyance in pursuance thereof, and subsequently passed to Church, under whom plaintiff holds. Adverse possession was not shown at least prior to 1881. The fact that Joshua remained in possession, after the sale of 1847, did not initiate adverse possession. (*Jackson* v. *Sternburgh*, 1 Johns. Cas. 153; *Jackson* v. *Graham*, 3 Caines,

188.) If, by the claim in 1881 under the deeds, Joshua and the defendants from that time may be deemed to hold adversely, it does not avail the defendants, being less than twenty years. Nor is the defense of adverse possession pleaded. (*Hensee* v. *Mead*, 27 Hun, 162; *Dezengremel* v. *Dezengremel*, 24 id. 457.)

But it is urged that the plaintiff does not show that she is possessed of the right which Henry Lewis had under the lease to him and Spencer in 1808. The argument seems to be that Lewis had, subject to the rents, an undivided one-half interest in the whole property, and that this has never been acquired by the plaintiff or extinguished as to the south half in question, and that, therefore, the plaintiff cannot recover here to exceed one undivided half.

It is not disputed that the plaintiff has the legal title to the whole of the south half. No one is now in possession of that half claiming under Lewis, and no one has apparently ever been in possession claiming under Lewis since the deed from Spencer to Washburn in 1814. The north half has had other occupants and its rent was released, in 1867, to Wright, who held under a deed given in 1839 of the north half only. The evidence warrants the conclusion that for fifty years and upwards there has been a separation or practical partition of the leasehold interest under the original lease, and that this was recognized as early at least as 1844 by the owner of the legal title.

Besides, if the Lewis interest in the south half remained it was subject to the payment of the rent. It was shown that for a number of years there had been no payment of rent, and, according to the rule laid down in *Central Bank of Troy* v. *Heydorn* (48 N. Y. 260), the rent for twenty years was presumptively unpaid. Its amount was shown. The defendants claimed at the trial that this evidence was not admissible as no demand was alleged in the complaint. This was not necessary under section 1504 of the Code. (See, also, *Martin* v. *Rector*, 118 N. Y. 476.) In the complaint there was a general allegation of ownership in fee and right to immediate possession. This is ordinarily enough to permit the plaintiff to show title and right to immediate possession. (*Austin* v. *Schluyter*, 7 Hun, 275; *Halsey* v. *Gerdes*, 17 Abb. N. C. 395; *Walter* v. *Lockwood*, 23 Barb. 228; Code, § 1511; 7 Ency. Pl. & Pr. 333.) If

the defendants claimed under Lewis, and the action was based upon their default in payment of rent, it may be that there should be in the complaint appropriate allegations on the subject. That question need not be here decided. The evidence was, I think, properly received as bearing upon the right of plaintiff to immediate possession.

Certain declarations of Mr. Church to Albert B. Davis in or about 1883 were offered by the defendants and received, as the defendants claim, in regard to the possession at that time of Albert. Those showed at most that Albert was not then in possession and that Church declined to put him in possession and said he couldn't. This, however, would not prevent the subsequent judgment recovered by Church's successor against Davis and the sale thereunder, from operating to cut off any interest that Albert or his heirs have in the premises. Assuming that Albert was never in possession and that Joshua remained in possession till the defendants went in under him, that would not help the defense. So that if, as the record shows, the declarations were excluded, the defendants were not harmed.

A careful consideration of the record before us leads us to the conclusion that a case was made for the recovery of the entire premises, and that no reversible error is apparent.

All concurred.

Judgment affirmed, with costs.